Bob SCHUL, Plaintiff,

v.

Jim SHERARD, et al., Defendants.

No. C–3–98–217.

United States District Court, S.D. Ohio, Western Division.

Jan. 24, 2000.

Paul R. Leonard, Dayton, OH, for plaintiff.

Robert J. Surdyk, Jenks, Surdyk & Cowdry Co., Dayton, OH, Stephen D. Brandt, Green & Green, Dayton, OH, for Sherard, Jim Sherard, Eric D. Ely, defendants.

C. Bronston McCord, III, Stephen D. Brandt, George Edward Roberts, II, Ennis, Roberts and Fischer, Cincinnati, OH, Richard Burke, defendant.

Michael Joseph Burdge, Young Pryor Lynn & Jerardi, Dayton, OH, Stephen D. Brandt, Ennis, Roberts and Fischer, Cincinnati, OH, for Board of Educ. for Huber heights School Dist., Dallas Slagle, Doris Studebaker, Bob Finch, Carl Fisher, John Haslett, defendants.

## DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. # 30); JUDGMENT TO BE ENTERED IN FAVOR OF DEFENDANTS AND AGAINST PLAINTIFF; TERMINATION ENTRY

RICE, Chief Judge.

This litigation stems from the Plaintiff's placement on administrative leave, from his position as a high school track coach, for allegedly advocating the use of caffeine as a performance-enhancing substance. After receiving a complaint that the Plaintiff had suggested the use of caffeine pills, or another form of caffeine, to one or more of his student-athletes, Defendant Eric Ely, the Principal of the school where the Plaintiff coached, imposed the administrative leave sanction on May 8, 1998. Thereafter, the Plaintiff commenced the present litigation on June 19, 1998, by filing a four-count Complaint, alleging a violation of 42 U.S.C. § 1983 (Count I), based upon a deprivation of his First Amendment right to freedom of speech (Count II), his First Amendment right to freedom of association (Count III), and his Fifth and Fourteenth Amendment due process rights (Count IV). The Complaint names the following Defendants: (1) Jim Sherard, individually and in his official capacity as Athletic Director for Wayne High School;

(2) Eric D. Ely, individually and in his official capacity as Principal for Wayne High School; (3) Richard Burke, individually and in his official capacity as Superintendent for the Huber Heights School District; (4) the Board of Education for the Huber Heights School District; (5) Dallas Slagle, individually and in his official capacity as President of the Huber Heights School District; (6) Doris Studebaker, individually and in her official capacity as Vice President of the Huber Heights School District; (7) Bob Finch, individually and in his official capacity as a member of the Huber Heights School Board; (8) Carl Fisher, individually and in his official capacity as a member of the Huber Heights School Board; (9) John Haslett, individually and in his official capacity as a member of the Huber Heights School Board; and (10) four John/Jane Doe Defendants. Pending before the Court is a Motion for Summary Judgment (Doc. # 30), filed by the Defendants.

## I. *Factual and Procedural Background*

At all relevant times, Plaintiff Bob Schul has been a social studies teacher for the Dayton City Schools. (Schul depo. at 5). In addition to his teaching duties with the City of Dayton, Schul signed a separate contract with the Huber Heights City Schools to serve as the head track coach at Wayne High School during the 1997–1998 school year. (*Id.* at 27–28). After Schul's selection became known to the public, Huber Heights City Schools Superintendent Richard Burke heard a complaint about Schul having mentioned caffeine or caffeine pills to a student athlete in the past.[1] (Burke depo. at 12, 17). According to Wayne High School Principal Eric Ely, the

school district also received telephone calls regarding Schul's prior advocacy of caffeine consumption or caffeine pills to enhance athletic performance. (Ely depo. at 26–28). In addition, the school district's athletic trainer expressed her surprise at Schul's selection for the position as head track coach. (Sherard depo. at 15). She told Wayne High School Athletic Director James Sherard that Schul "had a history of trying to get kids to take caffeine to enhance performance...." (*Id.* at 16).

After hearing these complaints and rumors, Sherard and Ely met with Schul to warn against his advocating caffeine as a performance-enhancing substance in his position as a coach at Wayne High School. According to Ely, the two school administrators informed Schul of the rumors and instructed him not to mention the word "caffeine" to members of the track team. (Ely depo. at 28). Similarly, in his deposition, Sherard recalled giving Schul a "directive" not to mention the word "caffeine" to members of the school's track team. (Sherard depo. at 14). Although Schul does not dispute speaking with Ely and Sherard about caffeine, he contends that he was told only that "[i]t would probably be best if you didn't mention caffeine[.]" (Schul depo. at 36).[2] Schul thought that this comment from Ely and Sherard was "strange," but he did not perceive it as a prohibition against mentioning caffeine to his team members. (*Id.* at 36–37).

In any event, during a track meet known as the Roosevelt Relays, Schul recommended that Wayne High School distance runner Gregory Starks should consume a cola, because the caffeine would help his body to function properly during an upcoming race.[3] (Schul depo. at 76–77, 136).

1. Prior to assuming the head coaching position at Wayne High School, Schul had held a number of other coaching jobs at the high school and collegiate level.

2. For purposes of ruling on the Defendants' Motion for Summary Judgment, the Court must construe the facts in a light most favorable to Schul, the non-moving party. Consequently, for purposes of its analysis herein,

the Court will accept as true Schul's claim about being informed only that it "would probably be best" if he did not mention the word "caffeine."

3. In his deposition, Schul made clear that he equates colas and soft drinks with caffeine. (Schul depo. at 60). Nothing in the record suggests that Schul recommended the consumption of colas or soft drinks for any rea-

He also told Starks, after the race, that a pre-competition soft drink would have "brought [his] body awake and mind awake" and would have improved the way he felt during the race.[4] (*Id.* at 118). During that post-race conversation, Schul and Starks then "had a discussion about what world[-class] athletes do with caffeine, that it is a legal substance, that there is no rule against it in the Olympic games, [and] no rule against it in [the] NCAA or in [the] high school federation." (Schul depo. at 118).

In his deposition testimony, Starks stated that Schul also mentioned the benefits of taking caffeine pills during a post-race conversation. (Starks depo. at 15–16). Starks further recalled Schul explaining that he (Schul) had consumed the pills to "get his heart moving," and suggesting that Starks might wish to do the same. (Starks depo. at 16). Although Schul categorically denies mentioning caffeine pills to Starks (as opposed to caffeinated drinks), it is undisputed that the student subsequently spoke with his friend and classmate, Dan Petrik, about Schul's references to caffeine. It is also undisputed that Starks told Petrik that Schul had suggested the use of caffeine pills. (Starks depo. at 27; Petrik depo. at 8, 12). Petrik subsequently mentioned Starks' claim to his mother, Melanie Plaster, who complained to Sherard. (Petrik depo. at 13–14; Plaster depo. at 12; Sherard depo. at 28). Plaster told Sherard that Schul "was telling Greg Starks to take caffeine pills, and that she didn't think it should be done...." (Sherard depo. at 29). Around that time, Ely received an angry telephone call from Starks' step-father, who wanted to know "why there was a coach telling his son to take caffeine...." (Ely depo. at 37). Ely and Sherard also spoke directly with Starks, who told them that Schul had

suggested the use of caffeine pills. (Starks depo. at 25, 29).

After receiving the foregoing complaints, Ely and Sherard met with Schul about his conversations with Starks. They informed him of the allegations regarding his recommendation of caffeine consumption to enhance Starks' athletic performance. (Schul depo. at 134). In response, Schul admitted telling Starks, prior to his race, that he should consume a soft drink. (*Id.* at 116–117, 135). He also admitted telling Starks, after the race, that consuming a pre-competition soft drink would have "brought [his] body awake and mind awake" and would have helped him not to feel "loggy." (*Id.* at 118, 135). Schul also does not dispute telling Starks about the use of caffeine by "world athletes." (*Id.* at 118). He cannot recall, however, whether he conveyed that portion of his conversation with Sparks to Ely and Sherard during their meeting. (*Id.* at 136).

In any event, after allowing Schul to explain his version of events, Ely handed him a letter and asked him to sign it. (Schul depo. at 92–93). The May 8, 1998, letter from Ely to Schul states:

It has been brought to my attention that you may have suggested to at least one of our student-athletes on the track team that he should take caffeine pills or another form of caffeine to enhance his performance. If this is true, I am very disappointed and disturbed. As you will recall, Mr. Sherard and I both specifically told you not to suggest caffeine (or anything else) to student-athletes to enhance their performance. This conversation occurred late in the summer of 1997. As a result of this situation, I am instituting an investigation to seek out the truth.

Until further notice, you are on administrative leave from your duties as

son other than to obtain a perceived benefit from the caffeine contained therein.

4. In his Complaint, Schul admits telling Starks that "the limited intake of caffeine in a

soft drink" would have helped to "facilitate the absorption of oxygen throughout his body, and that it was not illegal to consume a soft drink (cola)." (Doc. # 1 at ¶ 15).

Head Track Coach at Wayne High School. I am further directing you to have no further contact with team members and you are not to be on the premises of Wayne High School or the HUBER HEIGHTS CITY SCHOOLS without permission from Mr. Sherard, Athletic Director, Mr. Burke, Superintendent; or myself.

If you have any questions regarding this matter, please direct them to Mr. Sherard or myself. . . . You will be contacted once the investigation is complete.

(Doc. # 34 at Exh. 2; Schul depo. at 90, 94–95).

After receiving this letter, Schul wrote across the top, "I do not agree," or words to that effect. (Schul depo. at 91). Thereafter, he had no further contact with Starks or any other members of the track team. On June 19, 1998, Schul commenced the present litigation. (Complaint, Doc. # 1). His coaching contract expired on June 30, 1998, and it was not renewed.

## II. *Summary Judgment Standard*

The Court first will set forth the parties' relative burdens once a motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548. *See also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial[,]" quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 [6th Cir.1987] ). The burden then shifts to the non-moving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law under Fed.R.Civ.P. 50. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See also Michigan Protection and Advocacy Service, Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir.1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff"). Rather, Rule 56(e) "requires the non-moving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment

"shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir.1992). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure* § 2726.

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). *See also, L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.,* 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir.) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ...."), *cert. denied,*

506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, upon only those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

III. *Defendants' Motion for Summary Judgment (Doc. # 30)*

The Defendants seek summary judgment on each of the four Counts contained in Schul's Complaint, which alleges a violation of 42 U.S.C. § 1983 based upon a deprivation of his rights under the First, Fifth, and Fourteenth Amendments to the U.S. Constitution. As a means of analysis, the Court will address each Count of the Plaintiff's Complaint separately.

A. *Violation of 42 U.S.C. § 1983 (Count I)*

In Count I of his Complaint, Schul alleges generally that the Defendants' actions have violated 42 U.S.C. § 1983. That statutory provision does not itself create any constitutional rights. Rather, it creates a federal cause of action for "the vindication of constitutional guarantees found elsewhere." *Braley v. City of Pontiac,* 906 F.2d 220, 223 (6th Cir.1990). Thus, in order to succeed on a § 1983 claim, a plaintiff must show: (1) that he was deprived of a right secured by the federal Constitution or laws of the United States; and (2) that he was subjected to this deprivation by a person acting under the color of state law. *Searcy v. City of Dayton,* 38 F.3d 282, 286 (6th Cir.1994).

Count I of Schul's Complaint alleges a violation of § 1983, based upon an unspecified deprivation of his "civil rights secured by the Constitution and laws of the United States of America[.]"[5] (Doc. # 1 at ¶ 27).

---

5. As set forth, *supra,* the Plaintiff has sued the individual (i.e., non-entity) Defendants under § 1983 in both their "official" and "individu-

al" capacities. The Court notes, however, that a § 1983 claim against a person in his official capacity is nothing more than a suit

Although Count I fails to allege the deprivation of any particular constitutional right, Counts II, III, and IV identify the alleged constitutional deprivations which underlie his § 1983 claim. Specifically, Count II alleges a violation of Schul's right to freedom of speech, Count III alleges a violation of his right to freedom of association, and Count IV alleges a violation of his due process rights.[6] In order to determine whether Schul's § 1983 claim survives summary judgment, the Court must determine, as a threshold matter, whether a genuine issue of material fact exists as to the deprivation of one or more of these constitutional rights.

For the reasons to be set forth, *infra*, in its analysis of Counts II, III, and IV, the Court concludes, as a matter of law, that the Defendants' actions have not deprived Schul of his right to freedom of speech, his right to freedom of association, or his due process rights.[7] Construing the evidence in a light most favorable to Schul, the

Court finds no genuine issue of material fact as to whether the Defendants have violated any of the foregoing rights. In light of this conclusion, Schul's § 1983 claim necessarily fails. *Searcy*, 38 F.3d at 286. Accordingly, based upon the reasoning and citation of authority to follow, the Defendant's Motion for Summary Judgment is sustained, insofar as it relates to Count I of Schul's Complaint.

### B. *Violation of First Amendment Right to Freedom of Speech (Count II)*

In Count II of his Complaint, Schul alleges that the Defendants violated his First Amendment right to freedom of speech. In support of this claim, he argues that the Defendants unlawfully placed him on administrative leave, because he engaged in protected speech. Specifically, Schul contends that his remarks to Starks about caffeine consumption constitute free speech protected by

---

against his or her governmental employer. *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Consequently, insofar as the Plaintiff alleges "official capacity" liability, the Court will construe his Complaint as setting forth claims against the entities with which the individual Defendants are associated.

The Plaintiff also has sued the Board of Education for the Huber Heights School District. The Board may be held liable under § 1983 only if it caused a constitutional deprivation. The Board cannot be held responsible under a theory of *respondeat superior*. Rather, the Plaintiff must show that the Board itself, though a custom or policy, caused the alleged constitutional violation. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The custom or policy must be the "moving force" behind the constitutional violation. *Id.* at 694, 98 S.Ct. 2018. "[T]o satisfy the *Monell* requirements[,] a plaintiff must 'identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy.'" *Garnier v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir.1993), quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir.1987).

6. Although Schul has plead the alleged constitutional violations in Counts II, III, and IV as

free-standing claims, wholly independent of his § 1983 claim, they necessarily constitute an integral part of the § 1983 claim, which itself does not allege any specific constitutional violation. As set forth above, Schul cannot prevail on the § 1983 claim in Count I, unless he demonstrates that the Defendants violated a right secured by the Constitution. *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). Furthermore, the Sixth Circuit "has held that constitutional violations by state officials are not cognizable directly under the Constitution ... because 42 U.S.C. § 1983 provides the exclusive remedy for such constitutional violations." *Sanders v. Prentice–Hall Corp. System, Inc.*, 178 F.3d 1296, 1999 WL 115517 (6th Cir. Feb. 8, 1999), citing *Thomas v. Shipka*, 818 F.2d 496, 499 (6th Cir.1987), vacated and remanded on other grounds, 488 U.S. 1036, 109 S.Ct. 859, 102 L.Ed.2d 984 (1989). As a result, the Court will construe the alleged constitutional violations in Counts II, III, and IV of Schul's Complaint as part of the § 1983 claim set forth in Count I.

7. Given its finding that Schul has not been deprived of any right secured by the Constitution, the Court need not address the Defendants' alternative arguments regarding qualified immunity or municipal liability under *Monell v. Department of Social Services of City of New York* , 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

the First Amendment. Therefore, he insists that the Defendants acted unlawfully when they took an adverse employment action against him based upon those comments.

■ The Supreme Court has recognized that "a government employee retains [his] First Amendment right to comment on matters of public concern without fear of reprisal from the government as employer." *Dambrot v. Central Michigan Univ.*, 55 F.3d 1177, 1185 (6th Cir.1995). In order to determine whether the disciplinary action taken against Schul violated his free speech rights, the Court must employ the analytical framework set forth in *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Under the *Connick* test, "[t]he threshold question is whether [his] speech may be 'fairly characterized as constituting speech on a matter of public concern.'" *Id.* at 146, 103 S.Ct. 1684. "In general, a matter of public concern is a 'matter of political, social, or other concern to the community.'" *Id.* If Schul's speech does touch upon a matter of public concern, the Court then must proceed to the second step of its analysis, which requires a consideration of whether his free speech interests outweigh the interests of the Defendants as his governmental employer. *Dambrot,* 55 F.3d at 1186. If Schul's free speech interests do outweigh the interests of the Defendants as his employer, then his First Amendment rights have been violated. *Id.* Finally, if the Defendants did violate Schul's free speech rights, the Court must determine whether his speech was a substantial, motivating factor in the Defendant's decision to place him on administrative leave. *Id.*

On the other hand, if Schul's comments to Starks about caffeine were not a matter of public concern, there is no need to scrutinize the reason for his suspension, and the Court's inquiry will end. *Id.* When speech is not related to a matter of public concern, a court will not evaluate the propriety of an adverse employment decision, even if the reasons for the decision are mistaken or unreasonable. As the Supreme Court has recognized:

> When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment. Perhaps the government employer's dismissal of the worker may not be fair, but ordinary dismissals from government service which violate no fixed tenure or applicable statute or regulation are not subject to judicial review even if the reasons for the dismissal are alleged to be mistaken or unreasonable.

*Connick,* 461 U.S. at 146, 103 S.Ct. 1684.

■ In short, this Court will not review a government employer's personnel decisions "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters of only personal interest...." *Id.* at 147, 103 S.Ct. 1684.

Herein, the Defendants admit that Schul's remarks about caffeine prompted the disciplinary action taken against him. They argue, however, that his speech was not constitutionally protected, because it did not address a matter of public concern. Assuming, arguendo, that Schul's comments to Starks about caffeine did address a matter of public concern, the Defendants also argue that their interests as school administrators outweighed Schul's interests in expressing himself. Upon review, the Court finds persuasive the Defendants' argument that Schul's speech did not address a matter of public concern. The Court also agrees that the Defendants' interests in the efficient operation of the school district outweighed Schul's interests in speaking to Starks about caffeine, even if such speech did touch upon a matter of public concern.

In reaching these conclusions, the Court first notes that the *Connick* test for determining when speech is protected by the

First Amendment applies to what Ely and Sherard reasonably thought that Schul had said to Starks, without respect to what he may have actually said. *Waters v. Churchill,* 511 U.S. 661, 676–677, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994); *see also Id.* at 679, 114 S.Ct. 1878 ("We have never held that it is a violation of the Constitution for a government employer to discharge an employee based upon substantively incorrect information."). In the present case, Ely and Sherard had a reasonable basis for believing, based upon the complaints they had received and their discussion with Starks, that Schul had advocated the use of caffeine in the past, and that he had suggested the use of caffeine pills and caffeinated soft drinks to Starks. The fact that Schul denies suggesting the use of caffeine pills is of little import, given the Defendants' reasonable basis for believing that he did so. *See Waters,* 511 U.S. at 676, 114 S.Ct. 1878 (recognizing that government employers may rely upon hearsay, past similar conduct, and personal assessments of an individual's credibility when choosing to punish an employee for his speech). In any event, the Court concludes that Schul's speech did not address a matter of public concern, regardless of whether he suggested the consumption of caffeine pills *and* soft drinks, as the Defendants allege, or *only* soft drinks, as Schul himself admits to having done.

■ "A matter of public concern generally involves a matter of political, social, or other concern to the community." *Jackson v. City of Columbus,* 194 F.3d 737, 746 (6th Cir.1999). To determine whether Schul's speech touched upon a matter of public concern, the content, form, and context of his statements should be considered. *Connick,* 461 U.S. at 147–48, 103 S.Ct. 1684. As noted in *Connick,* a key inquiry is whether Schul spoke to Starks as a citizen discussing a matter of public concern, or as an employee discussing a matter of only personal interest. *Id.* at 147, 103 S.Ct. 1684; *see also Lancaster v. Independent School Dist. No. 5,* 149 F.3d

1228, 1233 (10th Cir.1998) (recognizing that "[t]he pertinent inquiry is whether plaintiff spoke as a citizen or an employee").

■ With the foregoing considerations in mind, the Court concludes that Schul's remarks to Starks about caffeine, whether in the form of a soft drink or a pill, did not address a matter of public concern. Schul's comments related to a purely private concern, the possibility of enhancing Starks' performance in a particular track meet. The form and context of Schul's speech both support this conclusion. Schul orally suggested the use of caffeine to Starks at the coach's home prior to a track meet. He later discussed the positive effects of caffeine after practice, while critiquing Starks' poor performance in the meet. The Court cannot envision members of the public being concerned about whether Starks' consumption of caffeine, in some form, would have helped him not to feel "loggy," thereby improving his performance at the Roosevelt Relays. The Court also notes that Schul spoke not as a citizen advocating the use of caffeine generally, but as a high school coach discussing a matter of personal concern to himself and Starks. Under such circumstances, the Court concludes that Schul's speech did not address a matter of public concern.

■ In any event, the Court has no difficulty concluding that the Defendants' interest in restricting Schul's speech far exceeds his interest in informing Starks about the benefits of caffeine, assuming, arguendo, that such comments did touch upon a matter of public concern. In light of the prior complaints and rumors regarding Schul's advocacy of caffeine pills, the Defendants were justified in believing that his continued speech on the topic would unreasonably interfere with both the efficient operation of Wayne High School and its extracurricular sports programs, and their interest in avoiding the use of any performance-enhancing drugs, legal or otherwise. Consequently, Ely and Sherard were justified in warning against

Schul's promotion of caffeine consumption to his student-athletes, placing him on administrative leave, and ultimately non-renewing his contract.[8]

Construing the evidence and all reasonable inferences in a light most favorable to Schul, the Court finds no genuine issue of material fact precluding the entry of summary judgment in favor of the Defendants on his free speech claim. Accordingly, the Defendants' Motion for Summary Judgment is sustained, insofar as it relates to Count II of Schul's Complaint.

## C. Violation of First Amendment Right to Freedom of Association (Count III)

In Count III of his Complaint, Schul asserts that the Defendants violated his right to freedom of association by directing him not to contact team members and by banning him from school district property without permission, while on administrative leave. Upon review, the Court finds this claim unpersuasive. At the outset, the Court notes that the Constitution does not include a "generalized right of 'social association.'" *City of Dal-*

las v. Stanglin, 490 U.S. 19, 25, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989); *Sanitation and Recycling Industry, Inc. v. City of New York*, 107 F.3d 985 (2nd Cir.1997). Rather, the Constitution protects only two distinct types of association: (1) "intimate" association; and (2) "expressive" association. *Roberts v. United States Jaycees*, 468 U.S. 609, 616–620, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984).

The freedom to engage in intimate association is related to privacy and derives from the Due Process Clause. *Corrigan v. City of Newaygo*, 55 F.3d 1211, 1214 (6th Cir.1995). It protects an individual's right to maintain certain intimate human relationships that "attend the creation and sustenance of a family—marriage, childbirth, the raising and education of children, and cohabitation with one's relatives." *Roberts*, 468 U.S. at 619, 104 S.Ct. 3244. The extension of the right to intimate association to other types of relationships depends upon whether they share the characteristics of a family relationship (i.e., whether they are small, select, and

**8.** In his Memorandum opposing summary judgment, Schul repeatedly argues that the Defendants never *prohibited* him from discussing caffeine with team members. According to Schul, Ely and Sherard merely suggested that it would be *best* if he did not mention caffeine. As a result, Schul did not believe that any restriction had been placed upon his ability to discuss caffeine, and he argues that his punishment for doing so is unfair. As the Court has explained, however, the fact that Schul's punishment might be unfair, or might be based upon a misunderstanding or misinformation, does not demonstrate a violation of the Constitution. *Connick*, 461 U.S. at 146, 103 S.Ct. 1684; *Waters*, 511 U.S. at 679, 114 S.Ct. 1878.

In his Memorandum, Schul also stresses a variety of other facts, none of which are material to the outcome of this litigation, namely: (1) that Ely and Sherard first talked with him about not mentioning caffeine after he had accepted the coaching job; (2) that nothing in his employment contract prohibited him from speaking about caffeine; (3) that the Defendants had no written policy against such speech; (4) that the Defendants did not have a formal policy regarding caffeine consumption; (5) that the Superintendent did not

know whether the school district had a policy regarding the use of steroids; (6) that the Ohio High School Athletic Association did not have a policy against the use of caffeine; and (7) that he never learned the results of the school district's investigation into the allegations against him.

Schul cites nothing to support the proposition that the Defendants lacked the authority to direct his workplace conduct after he signed an employment contract. The Court also finds no merit in his suggestion that oral instructions by an employer are not binding on an employee. Therefore, the absence of a formal, written policy regarding caffeine consumption is irrelevant. Likewise, the school district's policy regarding steroid use irrelevant, as is the OHSAA's position regarding caffeine consumption to enhance athletic performance. Finally, the Court finds no legal basis for Schul's suggestion that he had a constitutional right to learn the results of the Defendants' investigation. The Court recently rejected a similar argument in *Lewis v. Williams*, No. C–3–97–83 (S.D.Ohio Feb. 11, 1999) (Rice, J.), finding no constitutional violation, for purposes of a § 1983 action, resulting from the failure to notify a plaintiff about the results of an investigation.

excluded from others). *Sanitation and Recycling Indus., Inc.,* 107 F.3d at 996, citing *Roberts,* 468 U.S. at 618–622, 104 S.Ct. 3244.

■ In the present case, Schul cites nothing to suggest that his professional relationship with members of the track team and his desire to enter school property to continue that relationship implicate a right to intimate association.[9] In any event, the Court concludes that "[t]he specific types of intimate associations which have found protection in the First Amendment have been more intimate than our image of typical coach-player relationships." *Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1051 (5th Cir.1996).

The second type of association to receive constitutional protection involves expressive association. This form of association "is a means to another more basic end such as free speech in the political marketplace, the right of voters to cast an informed vote or to form coalitions with other voters." *Corrigan,* 55 F.3d at 1215. Stated differently, the right to expressive association "protects the right of individuals to associate for purposes of engaging in activities protected by the First Amend-

ment...." *Sanitation and Recycling Indus., Inc.,* 107 F.3d at 996; *see also Salvation Army v. Dept. of Community Affairs of the State of New Jersey,* 919 F.2d 183, 199 (3rd Cir.1990) ("[T]he right to expressive association is a derivative right, which has been implied from the First Amendment in order to assure that those rights expressly secured by that amendment can be meaningfully exercised...." Thus, there is "no constitutional right to associate for a purpose that is not protected by the First Amendment.").

In the present case, Schul makes no argument that he desired to enter school property and to associate with the track team members in order to engage in an activity protected by the First Amendment.[10] Rather, he asserts only a general interest in visiting or conversing with team members on school property.[11] Nothing in the record before the Court suggests that Schul intended to do anything more than engage in "social association" on school property, which, as noted above, is not recognized by the Constitution. *Stanglin,* 490 U.S. at 25, 109 S.Ct. 1591.[12]

Construing the facts and all reasonable inferences in a light most favorable to

**9.** It is not clear from Schul's Complaint or his Memorandum opposing summary judgment whether he even intends to assert a claim based upon his right to intimate association.. Count III of Schul's Complaint alleges only a violation of his "right to associate with the team that he has been hired to coach, the right to be on the premises of Wayne High School, and the premises of Huber Heights City Schools...." (Doc. # 1 at ¶ 31). Similarly, in his Memorandum opposing summary judgment, Schul asserts a right "to enter upon taxpayer-owned lands and [to] associate with young people that he has taught as student athletes...." (Doc. # 34 at 11–12).

**10.** In his deposition, Schul suggested that his freedom of association claim is related solely to his association with team members in his capacity as head coach of the Wayne High School track team. (Schul depo. at 107–108). When questioned about his freedom of association claim, he explained that his coaching relationship with the students is "fairly strong, because as you take a team through the year as a head coach and you believe that

the team can perform to certain levels, and then you're pulled out, and that team starts to disintegrate, you feel badly for those athletes involved." (*Id.* at 108).

**11.** *Cf. Hone v. Cortland City School Dist.,* 985 F.Supp. 262, 271–272 (N.D.N.Y.1997) (concluding that a school district did not violate a newspaper reporter's right to freedom of association when it banned him from school property after receiving complaints that he had harassed female coaches).

**12.** In *Stanglin,* the Supreme Court recognized that "[i]t is possible to find some kernel of expression in almost every activity a person undertakes—for example, walking down the street or meeting one's friends at a shopping mall—but such a kernel is not sufficient to bring the activity within the protection of the First Amendment." *Stanglin,* 490 U.S. at 25, 109 S.Ct. 1591. The Court then held that "coming together to engage in recreational dancing" constitutes neither intimate nor expressive association. *Id.*

Schul, the Court finds no genuine issue of material fact precluding the entry of summary judgment in favor of the Defendants on his freedom of association claim. In short, Schul has failed to present evidence from which a trier of fact could conclude that the Defendants deprived him of a constitutionally protected right, as a suspended head coach of the track team, to associate with members of that team.[13] *Cf. Wallace,* 80 F.3d at 1051 (holding that summary judgment was proper when a plaintiff basketball coach "produced no evidence that his association with the players was one entitled to constitutional protection"). Accordingly, the Defendants' Motion for Summary Judgment is sustained, insofar as it relates to Count III of Schul's Complaint.[14]

### D. *Violation of Fifth and Fourteenth Amendment Right to Due Process (Count IV)*

In Count IV of his Complaint, Schul alleges a violation his right to due process of law. Although Schul's Complaint fails to make clear the precise nature of the due process right at issue, he argues in his Memorandum opposing summary judgment that the Defendants have violated both his procedural and substantive due process rights. The Court will address these claims in turn.

### 1. *Procedural Due Process*

When considering a § 1983 procedural due process claim, the Court first must determine whether the interest at stake is a protected liberty or property interest. *Ferencz v. Hairston,* 119 F.3d 1244, 1247 (6th Cir.1997). "Only after meeting this requirement can the plaintiff prevail by showing 'that such interest was abridged without appropriate process.'" *Id.,* citing *LRL Properties v. Portage Metro Housing Authority,* 55 F.3d 1097, 1108 (6th Cir. 1995).

In the present case, Schul argues that his procedural due process claim stems from the Defendants' failure to provide him with a "name-clearing" hearing after placing him on administrative leave. In *Burkhart v. Randles,* 764 F.2d 1196, 1201 (6th Cir.1985), the Sixth Circuit recognized that "a person's reputation and good name

**13.** Even assuming, arguendo, that an intimate or expressive association did exist between Schul and members of the track team, the Court would nevertheless conclude that his freedom of association claim fails, as a matter of law, given the Defendants' "compelling interest in promoting the welfare of its school children." *Rivers v. Campbell,* 791 F.2d 837, 840 (11th Cir.1986) (finding that the state's compelling interest in promoting the welfare of school children precluded recovery by vendor who alleged a violation of his freedom of association after the school district prohibited him from selling sno-cones at area schools); *see also Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) ("Even a 'significant interference' with protected rights of . . . association may be sustained if the state demonstrates a significantly important interest. . . .").

**14.** In reaching this conclusion, the Court notes its disagreement with the Defendants' curious assertion that "the limitation placed upon plaintiff did not prevent him from associating with student athletes to discuss the benefits of caffeine." (Doc. # 30 at 15). Ely's letter to Schul expressly prevented him from associating with the track team members to discuss caffeine or anything else. It banned him from the property of the Huber Heights City Schools without prior permission, and it instructed him not to have any contact with members of the track team. Consequently, the Court finds unpersuasive the Defendants' argument that they did not interfere with Schul's ability to associate with team members. In light of the letter from Ely to Schul, the Court also finds no merit in the Defendants' alternative suggestion that they did not "directly and substantially" interfere with Schul's ability to associate with the student-athletes. As set forth above, however, the record is devoid of evidence suggesting that Schul had maintained anything other than a "social association" with members of the track team, or that the Defendants' disciplinary action had interfered with anything other than such social association. Consequently, the Court finds the Defendants entitled to summary judgment on Schul's freedom of association claim, despite the Defendants' interference with his ability to visit school property to speak with the team members.

are among the liberty interests protected by the [D]ue [P]rocess [C]lause of the [F]ourteenth [A]mendment from damage by public government action in connection with a termination of employment or refusal to rehire." *See also Paul v. Davis*, 424 U.S. 693, 707–08, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

In the employment context, a plaintiff asserting the loss of his liberty interest in his good name and reputation must establish: (1) that stigmatizing statements were made by the defendants in conjunction with the termination or non-renewal of the plaintiff's employment; (2) that the statements foreclose the plaintiff's ability to obtain other employment, (3) that the statements were made public by the defendants, (4) that a dispute exists concerning the truth of the charges; and (5) that the public dissemination by the defendants was voluntary. *Ludwig v. Bd. of Trustees of Ferris State Univ.*, 123 F.3d 404, 410–411 (6th Cir.1997). When the foregoing requirements are met, an employer must provide an opportunity for the plaintiff to clear his name, but only "when the plaintiff has made a request for such a hearing." *Id.* at 410. Furthermore, the hearing " 'need only provide an opportunity to clear one's name and need not comply with formal procedures to be valid.' " *Id.*, quoting *Chilingirian v. Boris*, 882 F.2d 200, 206 (6th Cir.1989).

In the present case, the Court finds no evidence to support Schul's claim that the Defendants injured his reputation, thereby depriving him of his liberty interest in his good name, without affording him procedural due process in the form of a name-clearing hearing. The Court reaches this conclusion because Schul has failed to identify any stigmatizing statements that were made public by the Defendants in connection with the termination or non-renewal of his employment. In his Memorandum opposing summary judgment, Schul argues that he experienced negative publicity and harm to his reputation, following his suspension, based upon defamatory allegations made by track team member Gregory Starks. (Doc. # 34 at 9–10). Notably, however, the record is devoid of evidence identifying *the Defendants* as the source of the negative publicity surrounding Schul's alleged advocacy of caffeine and his placement on administrative leave. In his deposition, Schul admitted that he does not know the genesis of the negative publicity surrounding the disciplinary action taken against him. (Schul depo. at 96). Remarkably, Schul also admitted that he knows of no one *other than himself* who provided information about his suspension to the media. (Schul depo. at 97–98). That information concerned his filing of the present lawsuit and related litigation in state court. (*Id.*). Schul further admitted that a number of his former athletes nationwide learned of the allegations against him and repeated that information via electronic mail. (*Id.* at 103, 105). In short, Schul has presented no evidence to support a finding the Defendants said or did anything publicly to harm his reputation.[15] Absent some evidence, however, that the Defendants made voluntarily, public, stigmatizing, and allegedly false statements about Schul in connection with the termination or non-renewal of his employment, no genuine issue of

---

15. In his deposition, Schul did recall once seeing Huber Heights City Schools Superintendent Richard Burke being interviewed on television. (Schul depo. at 101). Unfortunately, however, Schul could not remember what was said during the interview. (*Id.*). Although Schul has not cited this portion of his deposition testimony, the Court notes that Burke's mere appearance on television, without more, would not support a reasonable inference that he made false, stigmatizing statements in connection with the termination or non-renewal of Schul's employment. Absent some evidence about what Burke said during the interview, no trier of fact could find Schul entitled to a name-clearing hearing on the basis of that interview.

material fact exists with respect to his procedural due process claim.[16]

### 2. Substantive Due Process

 Schul next argues that the Defendants have violated his substantive due process right to complete his coaching contract and to receive a "name-clearing" hearing. The Court finds this argument unpersuasive. "Substantive due process protects fundamental interests, not state-created contract rights." *Thomson v. Scheid*, 977 F.2d 1017, 1020 (6th Cir.1992). Consequently, in *Holthaus v. Board of Educ., Cincinnati Public Schools*, 986 F.2d 1044, 1046 (6th Cir.1993), the Sixth Circuit recognized that "a breach of contract by a public employer does not give rise to a claim by its employee under § 1983 for a denial of substantive due process." *See also Sutton v. Cleveland Board of Educ.*, 958 F.2d 1339, 1351 (6th Cir.1992) (recognizing that a claim for improper discharge from public employment cannot be brought under the substantive component of the Due Process Clause). In light of the foregoing authorities, the Court finds no legal basis for Schul's contention that his placement on administrative leave for the remainder of his one-year contract implicates substantive due process concerns. The Court finds equally unpersuasive Schul's argument regarding a substantive due process right to a name-clearing hearing. Assuming, arguendo, that Schul had a right to such a hearing, his failure to receive one would constitute a denial of procedural due process, not substantive due process. *Holthaus*, 986 F.2d at 1046–1047. In any event, for the reasons set forth, *supra*, Schul was not entitled to a name-clearing hearing.

In light of the foregoing analysis, the Court finds the Defendants entitled to summary judgment on Count IV of the Plaintiff's Complaint. Construing the facts and all reasonable inferences in a light most favorable to the Plaintiff, the Court finds no genuine issue of material fact with respect to his procedural or substantive due process claims.

### IV. Conclusion

Based upon the reasoning and citation to authority set forth above, the Defendants' Motion for Summary Judgment (Doc. # 30), is hereby sustained.

Judgment will be entered in favor of the Defendants and against the Plaintiff.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

16. Parenthetically, the Court also notes the absence of evidence to suggest that Schul ever requested a name-clearing hearing. His failure to apprise the Defendants of his desire for a name-clearing hearing precludes his claim for a deprivation of his liberty interest in his good name. *Ludwig*, 123 F.3d at 410–411.