Norma Jean JEFFERSON, Plaintiff,

v.

**JEFFERSON COUNTY BOARD OF EDUCATION et al.,**
Defendants.

Civil Action No. 00–44–JBC.

United States District Court,
W.D. Kentucky.,
at Louisville.

Feb. 11, 2002.

James H. Highfield, Louisville, KY, Jennifer Jordan Hall, Louisville, KY, J. Key Schoen, Sales, Tillman & Wallbaum, Louisville, KY, David Lindsay Leightty, Louisville, KY, for plaintiff.

Michael K. Kirk, Wyatt, Tarrant & Combs, Louisville, KY, Wesley P. Adams, Jr., Adams, Hayward, Nichols & Welsh, Louisville, KY, Timothy H. Napier, Weber & Rose, Louisville, KY, Mark S. Fenzel, Dana L. Collins, Middleton & Reutlinger, Louisville, KY, for defendants.

## *MEMORANDUM OPINION & ORDER*

COFFMAN, District Judge.

This matter is before the court upon the defendants' motions for dismissal (No. 57), summary judgment (No. 65), and partial summary judgment (No. 66). The court, having reviewed the record and being oth-

erwise sufficiently advised, will grant the defendants' motions on the plaintiff's federal claims, dismiss without prejudice the plaintiff's state law claims, and deny the other motions.

### Factual Summary

On January 19, 1999, a group of angry parents entered Chenoweth Elementary School and demanded to speak with the school principal, Maxie Johnson. The parents informed Johnson that they had been told by Lisa Qureshi, the plaintiff's teaching assistant, that the plaintiff, a second- and third-grade teacher at Chenoweth, had acted inappropriately toward students in her class.[1]

The defendant, the Jefferson County Public School System (JCPS), investigated the parents' allegations. Its investigator, George Bell, reported to Carolyn Meredith, the Director of Employee Relations, that many of the allegations had been substantiated. As a result, Principal Johnson sent the plaintiff a letter on February 2, 1999 notifying her that she would be suspended for five (5) days without pay. The Superintendent, Stephen Daeschner, accepted Johnson's decision and notified the Board of Education of the suspension at its next meeting.

Meanwhile, Child Protective Services (CPS) also conducted an investigation at the complaining parents' request to determine whether the plaintiff had abused any of the children. The CPS report exonerated the plaintiff and found that the investigation conducted by Bell was deficient in several respects.[2]

The allegations against the plaintiff received intense local media coverage for several weeks. Television and newspaper reports included interviews with Lauren Roberts, spokesperson for JCPS, who described the allegations made against the plaintiff, explained that some of them had been internally substantiated, and indicated that the plaintiff had been suspended for five days. Roberts also made public statements that eight children had been removed from the plaintiff's class because of the alleged abuse and that, although she would not be fired, the plaintiff had acted inappropriately and unprofessionally.

Prior to the imposition of her suspension on February 3, 1999, the plaintiff was not offered a hearing. As JCPS was conducting its internal investigation, however, she and a representative of the Jefferson County Teachers' Association (JCTA), Ruby Fitzgerald, met with Bell and Johnson and were advised that parents were accusing her of abusing her students. The plaintiff denied the allegations at this pre-suspension meeting orally and in writing.

On February 5, 1999, the plaintiff and Fitzgerald met with Meredith and Minor Daniels, the Executive Director of Business Affairs, to discuss where the plaintiff would be assigned after she finished serving her suspension. At this meeting, the plaintiff was told she would be temporarily

---

1. Specifically, the parents accused the plaintiff of: (1) yelling at and forcibly grabbing students by their arms/shirt collars; (2) hitting a student in the face with clay; (3) giving students answers during the administration of a test; (4) allowing students to watch the Jerry Springer show in the classroom; and (5) allowing students to eat in class throughout the day.

2. The plaintiff and CPS claim that the JCPS investigation was flawed because Bell interviewed only some of the students in the plaintiff's class, many of whom were children of parents who were making accusations against the plaintiff. The plaintiff and the CPS also claim that the JCPS investigation was inadequate because: (1) the children were typically interviewed in the presence of their parents, (2) it lasted only one week, and (3) it relied too heavily on the uncorroborated hearsay of Qureshi and parents.

assigned to a language arts teaching position at another school, to be followed by a permanent assignment for the 1999–2000 school year. Knowing that Jefferson may be harassed by the media if she resumed teaching, Meredith permitted the plaintiff to assume a non-instructional position and retire at the end of the year if she so chose. At the conclusion of the meeting, the plaintiff signed a letter indicating that she would retire at the end of the school year.

On February 12, 1999, the plaintiff appealed her suspension, but her grievance was denied on its first two levels by her principal and by the Superintendent's designee, Meredith. The plaintiff then submitted her case to arbitration. On or about May 11, 1999, an arbitrator was selected by the parties. The plaintiff's arbitration grievance, however, has been held in abeyance pending the outcome of this case.

Based on the foregoing events, the plaintiff has sued Qureshi for defamation, tortious interference with her employment, and abuse of a teacher under Ky.Rev.Stat. § 161.190.[3] She has also made claims against JCPS (by and through the Jefferson County Board of Education), Daeschner, Meredith, Bell, and Johnson (the "JCPS defendants") for the following: (1) deprivation of property without due process, (2) deprivation of liberty without due process, (3) exercise of arbitrary power in violation of §§ 1 and 2 of the Kentucky Constitution, and (4) canceling and postponing indefinitely her arbitration hearing in retaliation for her decision to file suit in this court.

## Analysis

### A. Due Process Property Claims

■ The plaintiff claims that her procedural due process rights were violated when she was not given a hearing before her five-day suspension was imposed. She also claims that her substantive due process rights were violated because: (1) she was coerced, intimidated, and forced into retiring; (2) the defendants intentionally delayed and canceled the arbitration hearing she requested; and (3) two of the people who assisted Bell in the JCPS investigation, Johnson and Meredith, also decided the plaintiff's punishment and denied her first two grievances.[4]

To establish that the five-day suspension without pay deprived her of due process, she must establish that she had a property interest in continued pay and benefits during her suspension. *Ludwig v. Bd. of Trustees of Ferris State Univ.*, 123 F.3d 404, 409 (6th Cir.1997). Property interests do not emanate directly from the Constitution, but from state law or contractual agreements. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Ludwig*, 123 F.3d at 409.

Assuming that she had a property right in continued pay and benefits,[5] and assum-

---

**3.** The plaintiff also sued Principal Johnson for abuse of a teacher, but she conceded at the pretrial conference of this case that she will forgo this claim.

**4.** These latter non-suspension-related allegations are substantive due process claims because the plaintiff argues that these actions were categorically unconstitutional, not that they were unconstitutional because they were taken before she received notice and an opportunity to be heard. *See Charles v. Baesler*, 910 F.2d 1349, 1352–53 (6th Cir.1990).

**5.** The collective bargaining agreement between the JCTA and the Board (the "CBA") does appear to grant the plaintiff a property interest in continued pay and benefits since it provides that a teacher may be suspended only for "just cause." *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–39, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Leary v. Daeschner*, 228 F.3d 729, 742 (6th Cir. 2000); *Williams v. Kentucky*, 24 F.3d 1526, 1537–38 (6th Cir.1994).

ing a five-day suspension without pay is a significant deprivation of that interest,[6] the plaintiff nevertheless may not seek relief here under 42 U.S.C. § 1983.[7]

"In section 1983 damage suits for deprivation of property without procedural due process[,] the plaintiff has the burden of pleading and proving the inadequacy of state processes, including state damage remedies[,] to redress the claimed wrong." *Mansfield Apartment Owners Ass'n v. Mansfield,* 988 F.2d 1469, 1475 (6th Cir. 1993); *see also Sutton v. Cleveland Bd. of Educ.,* 958 F.2d 1339, 1349 (6th Cir.1992)(citing *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). Here, the plaintiff has produced no evidence that a post-deprivation action in state court would be inadequate to compensate her for the five days of pay she lost.[8] Nor has she alleged or shown that the procedures set forth at Ky.Rev.Stat. § 161.790(4)-(7) would be inadequate.[9] Accordingly, she may not seek relief under § 1983 for her five-day suspension.

■ Similarly, the plaintiff may not bring an action under § 1983 for alleged violations of substantive due process. Where, as here, the plaintiff alleges an interference with a "specific benefit, term, or condition of employment" that does not affect the "tenured nature of employment," she may seek relief only by "a state breach of contract action and not by a federal action under section 1983." *Ramsey v.*

6. The landmark decision in *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) noted that due process requires "some pretermination opportunity to respond" only where a person is deprived of a "significant property interest." Whether a five-day suspension without pay is a significant loss of property has not been decided by the Supreme Court. *Berardinelli v. Town of Newburgh,* 895 F.Supp. 56, 57, n. 3 (S.D.N.Y.1995). The issue has received inconsistent treatment from the lower courts. Compare *Garraghty v. Jordan,* 830 F.2d 1295, 1299 (4th Cir.1987)(holding that five-day suspension was not a de minimis deprivation) and *Boals v. Gray,* 775 F.2d 686, 689 (6th Cir.1985)(holding that five-day suspension was not de minimis deprivation where it was unreviewable under state law and included First Amendment claims); with *Gillard v. Norris,* 857 F.2d 1095, 1098 (6th Cir.1988)(three-day suspension without pay did not trigger due process protections); *Carter v. Western Reserve Psychiatric Habilitation,* 767 F.2d 270, 272, n. 1 (6th Cir.1985)(two-day suspension without pay was a de minimis deprivation not deserving of due process protection); and *Hershinow v. Bonamarte,* 735 F.2d 264, 265 (7th Cir.1984)(holding that due process protections do not apply where a public employee is not fired).

7. Although the plaintiff has attempted to assert her federal claims directly under the Fourteenth Amendment, 42 U.S.C. § 1983 provides the exclusive remedy for constitutional violations by state officials. *Schul v. Sherard,* 102 F.Supp.2d 877, 883–884, n. 6 (S.D.Ohio 2000). Thus, the court construes the plaintiff's complaint as alleging her due process claims under § 1983. *Id.*

8. In *Presley v. Board of Educ.,* 859 S.W.2d 133 (Ky.Ct.App.1993) the court upheld the summary dismissal of a schoolteacher's § 1983 due process claim involving a one-day suspension without pay because a breach of contract action in state court would have been adequate to compensate the plaintiff.

9. These procedures—which the plaintiff does not dispute the defendants followed—required that the plaintiff be furnished with a written statement of the charge. The plaintiff could then have elected to notify the chief school officer within ten days of her intent to answer the charges which would have, in turn, required the selection of a three-member tribunal that would have held a hearing within forty-five (45) days. If the three-member panel decided to reverse the decision to suspend the plaintiff, she could have been awarded backpay for the five days of lost pay. *See* Ky.Rev.Stat. § 161.790(8). However, the plaintiff does not dispute that she failed to notify an official at the school of her intent to answer the charges within ten days. Therefore, she waived her right to any hearing before a tribunal. *See Leary,* 228 F.3d at 743–44.

*Bd. of Educ. of Whitley County,* 844 F.2d 1268, 1274–75 (6th Cir.1988); *Charles,* 910 F.2d at 1354–55. Furthermore, "public employees enjoy no substantive due process right in public employment." *Black v. Columbus Public Schools,* 124 F.Supp.2d 550, 584 (S.D.Ohio 2000). Thus, as a matter of law, the plaintiff's substantive due process claims must be dismissed.

**B. Due Process Liberty Claims**

The plaintiff's due process liberty claim fails as a matter of law. As explained earlier, the plaintiff has failed to produce any evidence that the post-deprivation procedures and remedies available to her under Ky.Rev.Stat. § 161.790 or in an action in state court would have been inadequate to redress her liberty interests in a name-clearing hearing. This alone is fatal to her due process liberty claim. *See Jackson v. City of Columbus,* 194 F.3d 737, 750 (6th Cir.1999).

**C. Retaliation Claims**

██ The plaintiff claims that the defendants canceled her arbitration hearing in retaliation for her decision to file a complaint in this court. The plaintiff, however, has failed to come forward with any proof to support this claim. The record reflects that the decision to cancel her arbitration hearing was made by Neal and Meredith—in accordance with the CBA—because she had made a complaint with another agency. There is nothing in the record to suggest that Neal, the plaintiff's own JCTA representative, and Meredith agreed to cancel the plaintiff's arbitration as a means of retaliating against her for exercising her constitutional right to seek access to the courts. Instead, the record shows that this decision was made to avoid redundant processes and is part of the standard policy embodied in the CBA. Accordingly,

**IT IS ORDERED** that the defendants' motion for summary judgment (No. 65) is **GRANTED IN PART AND DENIED IN PART.** Insofar as the defendants' motion seeks summary judgment on the plaintiff's federal claims, it is granted; otherwise, it is denied.

**IT IS FURTHER ORDERED** that the plaintiff's state law claims for defamation, abuse of teacher, tortious interference with employment, and arbitrariness are **DISMISSED WITHOUT PREJUDICE** pursuant to this court's power under 28 U.S.C. § 1367(c)(3).

**IT IS FURTHER ORDERED** that the defendant's motion to dismiss (No. 57) is **DENIED AS MOOT,** as the court will dismiss the action on grounds other than those recited in the motion.

**IT IS FURTHER ORDERED** that the defendant's motion for partial summary judgment (No. 66) is **DENIED AS MOOT,** as the court declines to exercise supplemental jurisdiction over the plaintiff's state law claims.

**IT IS FURTHER ORDERED** that the jury trial scheduled in this action for February 19, 2002 at 10:00 a.m. in Louisville is **CANCELLED.**