**Robert George FERENCZ, doing business as Blue Line Remodeling; Gary W. Kerekes, doing business as Sunnyside Construction Company, Plaintiffs–Appellants,**

v.

**Dianna HAIRSTON, et al., Defendants–Appellees.**

No. 96–3563.

United States Court of Appeals, Sixth Circuit.

Argued June 6, 1997.

Decided July 23, 1997.

Harland M. Britz (argued and briefed), Britz & Zemmelman, Toledo, OH, for Plaintiffs–Appellants.

Robert G. Young (argued and briefed), Office of the City of Toledo Law Department, Toledo, OH, for Defendants–Appellees.

Before: LIVELY, MERRITT, and SUHRHEINRICH, Circuit Judges.

## OPINION

LIVELY, Circuit Judge.

This case involves claims of due process violations brought by individuals whose names were removed from a list of eligible contractors for city work. The defendants are officials of the City of Toledo, Ohio. The district court granted summary judgment for the defendants on the plaintiffs' claims for deprivation of property interests and judgment as a matter of law on the claims for deprivation of liberty interests. After a *de novo* review of the record on appeal, we affirm the judgment of the district court.

## I.

The plaintiffs Robert Ferencz, d/b/a/ Blue Line Remodeling, and Gary Kerekes, d/b/a/ Sunnyside Construction Company, are remodeling contractors. Both were among sixteen contractors on a list compiled by the City of Toledo's Department of Community Development, a list from which bids were solicited for rehabilitation projects funded by federal Community Development Block Grants. Whenever a federally funded rehabilitation project became available within the City of Toledo, the city allowed three of the contractors on the list the opportunity to submit bids on the project. The city would select the "best" and lowest bid, but the property owner was not bound by the city's choice; in fact, the property owner could choose to have the work performed by any contractor by simply paying the difference between the price of that contractor's bid and the bid selected by the city. The successful bidder would then enter into a contractual relationship with the eligible homeowner, and payment would be made with federal block funds. Unsuccessful bidders from the list would await rotation to bid on future projects. In the past Ferencz and Kerekes had bid on and completed numerous federally funded projects within the city.

In the late 1980s, the United States Department of Housing and Urban Development (HUD) performed a random inspection of federally funded rehabilitation projects in Toledo. The investigation turned up a number of deficiencies, and the city was ordered to resolve the deficiencies and reimburse the federal government for payments made on deficient work. The defendants Anthony Reams and Dianna Hairston each served as Interim Director of the Department of Community Development during the period of the investigation and compliance efforts. Ms. Hairston sent both plaintiffs letters on October 11, 1989, informing them that they had been removed from the list because of allegedly substandard work. The plaintiffs were not notified of the specific deficiencies alleged against their work until December 15, 1989, when the defendant James Guenther, the Housing Rehabilitation Administrator for the City of Toledo, notified them by letter. The letters contained allegations of failing to pull permits properly and of shoddy workmanship on projects for which pre-payment had been made. Local news media, including the *Toledo Blade*, published the names of the suspended contractors as well as the city's allegations of poor workmanship and permit violations.

In an effort to clear up the allegations against him, Mr. Ferencz met with James Guenther on numerous occasions. Ferencz was ultimately found to be in substantial compliance after correcting all of the alleged deficiencies in workmanship. He was, however, not restored to the contractor list. Mr. Kerekes claims to have encountered similar difficulties in his efforts to be restored to the list. He claims to have been aware of no specific deficiencies and to have written to Ms. Hairston, requesting that she identify the jobs that he was being accused of having deficiently performed. Mr. Kerekes testified that he asked Guenther to meet him at the job sites to "clear up" the situation, but Guenther never accompanied Kerekes to any of the job sites. Kerekes did ultimately speak with Guenther, confronting him about the accusations published in the *Toledo Blade*.

## II.

In this consolidated civil action, brought under 42 U.S.C. § 1983, the plaintiffs sought restoration to the list of eligible bidders for city rehabilitation work and damages both for lost business income and for injury to their reputations. Upon concluding that the plaintiffs had no property interest that was protected by the Due Process Clause of the Fourteenth Amendment resulting from their relationship with the city, the district court granted summary judgment to the defendants on November 24, 1993. On December 14, 1993, the court entered an order holding in abeyance further proceedings on the claim of infringement of a liberty interest pending completion of a "name-clearing" hearing. This hearing was held in February 1994. The plaintiffs claimed that the hearing was untimely; that they had demanded such a hearing much earlier and had suffered damages because of the city's delay in holding it. The district judge empaneled a jury for trial of the plaintiffs' claims of deprivation of liberty interests. After the plaintiffs had presented all their evidence, the court granted the defendants' motion pursuant to FED. R.CIV.P. 50(a) for judgment as a matter of law. The court based its ruling upon a finding that neither plaintiff had requested a name-clearing hearing.

## III.

In considering procedural due process claims, we first determine whether the interest at stake is within the Fourteenth Amendment's protection of liberty and property. Only after we have concluded that the interest claimed is within that protection do we consider the form and nature of the process that is due. *Board of Regents v. Roth,* 408 U.S. 564, 570–71, 92 S.Ct. 2701, 2705–06, 33 L.Ed.2d 548 (1972). Thus, in a § 1983 due process claim for deprivation of a property interest, a plaintiff must first show a protected property interest. Only after meeting this requirement can the plaintiff prevail by showing " that such interest was abridged without appropriate process." *LRL Properties v. Portage Metro Housing Authority,* 55 F.3d 1097, 1108 (6th Cir.1995).

## A.

To establish a property interest in a particular benefit, a plaintiff must have a "legitimate claim of entitlement to it." *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. Property interests are not created by the Fourteenth Amendment; instead, they are "created and defined by independent sources, such as state law." *McLaurin v. Fischer,* 768 F.2d 98, 102 (6th Cir.1985) (*citing Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985); *Goss v. Lopez,* 419 U.S. 565, 572–73, 95 S.Ct. 729, 735–36, 42 L.Ed.2d 725 (1975)). Ohio courts recognize property interests created by "mutually explicit understandings" or by "unwritten common law practice in the workplace." See, *e.g., Yashon v. Gregory,* 737 F.2d 547, 553–54 (6th Cir.1984) (discussing Ohio law).

## B.

The property interest claimed by the plaintiffs in this case is an entitlement to remaining on the bid list. They assert that the list gives rise to an expectation that they will receive valuable business opportunities. They also claim to have had mutually explicit understandings with the defendants that they would remain on the bid list so long as they wished and their work remained satisfactory. Because the plaintiffs wished to remain on the list and had performed numerous satisfactorily inspected and paid projects for the city, they maintain that their interest in remaining on the list was one deserving of Fourteenth Amendment protection. Yet, being on the list entitled the plaintiffs to nothing more than the opportunity to make the lowest and "best" bid, a bid that could be rejected by the homeowner even if selected by the city. More significant is that fact that the city's discretion in determining the "best" bid forecloses any claim that being listed guarantees any contracts coming to the plaintiffs.

The plaintiffs' asserted property right is similar to a claimed interest rejected by the Court of Appeals for the Tenth Circuit in *Koerpel v. Heckler,* 797 F.2d 858 (10th Cir. 1986). In that case, the court determined

that a physician's expectation of Medicare reimbursement was not sufficient to create a property right since merely being on the list of eligible physicians did not guarantee any actual employment or payments. The court also pointed out that the physician was not the intended beneficiary of the Medicare program; it is intended to benefit elderly patients. *Id.* at 864. The plaintiffs in the present case are in a similar position—being on the list may result in a benefit (contractual relationship with homeowners for rehabilitation projects), but whether such benefit actually comes to fruition is beyond the plaintiffs' control. And, the rehabilitation program is intended to benefit low-income persons by providing housing at a reasonable cost; it is not for the benefit of contractors. One other similarity between the two cases is that neither the plaintiffs in the present case nor the physician in *Koerpel* suffered the loss of a license to continue in their occupations as a result of being delisted.

In *United of Omaha Life Ins. Co. v. Solomon,* 960 F.2d 31 (6th Cir.1992), this court held that "[a] 'disappointed bidder' to a government contract may establish a legitimate claim of entitlement protected by due process by showing either that it was actually awarded the contract at any procedural stage or that local rules limited the discretion of state officers as to whom the contract should be awarded." *Id.* at 34 (*citing Peterson Enter., Inc. v. Ohio Dep't of Mental Retardation and Developmental Disabilities,* 890 F.2d 416 (6th Cir.1989) (unpublished opinion)). Because the plaintiff in that case had made no such showing, it was found to have "only a unilateral hope of being awarded the contract, not a right to it." *Id.* at 35. While our case is not, strictly speaking, a "disappointed bidder" case, it is analogous in that the plaintiffs' due process claim is based on the alleged failure of the city to follow its practice of keeping their names on the list and giving them an opportunity to bid when their names come up on the normal rotation. Inasmuch as the plaintiffs never had an assurance of receiving contracts, they are attempting to create a property interest based on the city's alleged failure to follow its usual procedures. This effort is unavailing; a governmental body's failure to follow a given procedure does not create a property right. See *LRL Properties,* 55 F.3d at 1110 ("This Court has held that 'no property interest exists in a procedure itself, without more.'") (citation omitted). The plaintiffs failed to identify any state law or "mutually explicit understanding" that would convert their unilateral expectations into property interests.

Our decision in *LRL Properties* relied on facts quite similar to those found in the present case. The plaintiffs in *LRL Properties* had participated in another program, known as Section 8, under which HUD offers financial assistance to persons who provide low-income housing. When city officials deviated from established procedures in a way that made it difficult for them to receive financial support, the plaintiffs brought a § 1983 action, claiming due process violations. The *LRL Properties* court found no property interest in the plaintiffs' unilateral desire to participate in a special program where discretion was vested in local officials to determine an applicant's eligibility to receive benefits. 55 F.3d at 1110. Similarly, in this case, there is no property interest in the plaintiffs' unilateral desire to participate in the federally funded rehabilitation program because the city is vested with discretion to determine the "best" bid and the property owner has the ability to reject any bid selected by the city. The district court correctly found that plaintiffs did not have a property interest within the protection of the Fourteenth Amendment.

The district court properly awarded summary judgment to the defendants on the plaintiffs' deprivation of property claims.

### IV.

The plaintiffs also contend that the district court erred in granting defendants' motion for judgment as a matter of law on their § 1983 claim for deprivation of a liberty interest based on a newspaper's publication of the reasons for their suspension from the bid list. Although the arguments on appeal primarily concern the presumed need for a name-clearing hearing, plaintiffs' liberty claim fails for a more fundamental reason:

plaintiffs have not asserted a protected liberty interest.

In *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), the Supreme Court stated that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Id.* at 437, 91 S.Ct. at 510. The Court, however, later clarified this language in *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), stating that this language "referred to the fact that the governmental action taken in that case deprived the individual of a right previously held under state law—the right to purchase or obtain liquor in common with the rest of the citizenry." *Paul,* 424 U.S. at 708, 96 S.Ct. at 1164. The statute at issue in *Constantineau* significantly altered the plaintiff's status as a matter of state law. The alteration of that legal status, combined with the injury resulting from the defamatory nature of the posting of a notice, justified invocation of procedural safeguards. *Id.* at 708–09, 96 S.Ct. at 1164. In *Paul,* the Court also held that its case law "does not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." *Id.* at 701, 96 S.Ct. at 1161.

Aside from instances where state law provides the source of the right, the Supreme Court has never held that "the mere defamation of an individual, whether by branding him disloyal or otherwise, was sufficient to invoke the guarantees of procedural due process absent an accompanying loss of government employment." *Id.* at 706, 96 S.Ct. at 1163 (footnote omitted). Like the plaintiff in *Paul,* the plaintiffs here cannot claim any "right or status previously recognized by state law [that] was distinctly altered or extinguished" by removal of their names from the bid list. *Id.* at 711, 96 S.Ct. at 1165. As with the plaintiff Davis in *Paul,* the interest in reputation alone which the plaintiffs in this case seek to vindicate is "quite different"

from the liberty interest that the Due Process Clause protects. *Id.*

Because the publication complained of, even if defamatory, was not accompanied by the deprivation of any more tangible interest such as continued employment, the publication did not deprive the plaintiffs of a liberty interest. Thus, the district court properly entered judgment for the defendants on these claims.

**V.**

■ Even if the defendants had violated a liberty interest by stigmatizing the plaintiffs with accusations of fraud or dishonesty while depriving them of a right or status previously conferred by state law, due process would have required an ordinary administrative hearing, "appropriate to the nature of the case," *Transco Security, Inc. v. Freeman,* 639 F.2d 318, 321 (6th Cir.1981), with notice and an opportunity to be heard, not a so-called "name-clearing" hearing.

■ The detailed discussion of name-clearing hearings in the district court's final opinion and in the parties' briefs demonstrates a misunderstanding of the law concerning such hearings. A name-clearing hearing is required only when a nontenured public employee is dismissed from his or her job and publicly stated reasons that reflect on the terminated employee's honesty or integrity are relied upon, either explicitly or implicitly. There is no requirement that a name-clearing hearing be provided for disappointed bidders and others desiring to do business with governmental units or public agencies.

In *Codd v. Velger,* 429 U.S. 624, 627, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977), the Supreme Court stated that "the hearing required where a nontenured employee has been stigmatized in the course of a decision to terminate his employment is solely 'to provide the person an opportunity to clear his name.' " In support of this statement the Court cited *Roth,* 408 U.S. at 573, 92 S.Ct. at 2707, and *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), both cases involving the termination of nontenured public employees. *Codd* at 626–28, 97 S.Ct. at 883–85.

In *Burkhart v. Randles,* 764 F.2d 1196 (6th Cir.1985), this court found error in the district court's failure to instruct the jury that two terminated public employees were entitled to a name-clearing hearing where they had been stigmatized by the reasons the employer gave for their dismissal. Describing the applicability of the name-clearing requirement, the court stated:

> It is well established that a person's reputation and good name are among the liberty interests protected by the due process clause of the fourteenth amendment from damage by public government action in connection with a termination of employment or refusal to rehire. *Paul v. Davis,* 424 U.S. 693, 707–08, 96 S.Ct. 1155, 1163–64, 47 L.Ed.2d 405 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972); *Lee v. Western Reserve Psychiatric Hab. Center,* 747 F.2d 1062, 1069 (6th Cir.1984); *Kendall v. Board of Ed. of Memphis City,* 627 F.2d 1, 5 (6th Cir.1980). Accordingly, the Supreme Court has determined that where a nontenured employee shows he has been stigmatized by the voluntary, public dissemination of false information in the course of a decision to terminate his employment, the employer is required to afford him an opportunity to clear his name. *Codd v. Velger,* 429 U.S. 624, 627–28, 97 S.Ct. 882, 883–84, 51 L.Ed.2d 92 (1977) (per curiam); *Kendall,* 627 F.2d at 5.

*Id.* at 1201(footnote omitted).

So far as we are able to determine, every case in which this court has discussed or required a name-clearing hearing has involved the dismissal of a public employee accompanied by stigmatizing statements by the employer. Neither plaintiff in this case was a public employee who was terminated. Thus, the reasons given by the district court in this case for granting the defendants' motion for judgment as a matter of law on the plaintiffs' claims of infringement of a liberty interest were wrong. Nevertheless, as our discussion in Part IV of this opinion indicates, our *de novo* review leads to the conclusion that the judgment dismissing this claim was correct.

The judgment of the district court is **AFFIRMED**.