**NOT RECOMMENDED FOR PUBLICATION**
File Name: 07a0240n.06
Filed: April 2, 2007

**No. 06-5305**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

SHARRON BESSENT,                  )
                                            )
     Plaintiff-Appellant,            )
                                            )
v.                                      )    ON APPEAL FROM THE UNITED
                                          )    STATES DISTRICT COURT FOR
                                          )    THE WESTERN DISTRICT OF
DYERSBURG STATE COMMUNITY COLLEGE,    )    TENNESSEE
and DR. KAREN BOWYER, individually and in her  )
official capacity as President of Dyersburg State    )
Community College,                    )
                                          )
     Defendants-Appellees.        )

---

Before: SILER, MOORE, and ROGERS, Circuit Judges.

**SILER**, Circuit Judge. Plaintiff Sharron Bessent appeals the district court's order granting summary judgment in favor of Dyersburg State Community College ("DSCC") and DSCC President Dr. Karen Bowyer (collectively, "Defendants") in this 42 U.S.C. § 1983 action. Bessent, a former supervisor of DSCC's adult education program, alleges that her First Amendment and procedural due process rights were violated when she was fired in retaliation for making statements regarding the internal operation of DSCC's adult literacy program and denied a name-clearing hearing. We AFFIRM.

**BACKGROUND**

Bessent started the Dyer County Literacy Program ("DCLP") in 1986 as a non-profit community-based agency focused on adult literacy in Dyer County, Tennessee. Originally, DCLP was completely funded by private donations. In 1991, the State of Tennessee allocated funding for a full-time adult education program in every county. DCLP received this state funding for Dyer County between 1992 and 1997.

In 1997, DCLP's board re-applied for the grant, but sought another agency to act as fiscal agent while it still retained authority to administer the grant funds. In June 1997, Bessent and Dr. Bowyer agreed to form a cooperative effort between DSCC and DCLP, pursuant to which DCLP would be responsible for a grant match, provide classroom facilities, hire and supervise teachers and employees, accept responsibility for in-service training, and administer the grant, while DSCC would act as fiscal agent for the grant. DSCC also required Bessent to provide an hourly rate for employees receiving grant funds, complete time sheets for part-time employees, and fill out forms for in-service training and materials purchased through the grant. DCLP employees were also required to execute employment contracts with DSCC.

Following allegations of inappropriate overtime, falsification of time sheets and clients served, and other fabrications at DCLP, DSCC Director of Finance Administration Mitch Robinson notified Bessent that the state would be conducting an audit of DCLP and that DSCC intended to take control of DCLP, including its private donations.

Bessent voiced opposition to DSCC's planned takeover because she believed that such a consolidation would lead to a funding shortfall, while at the same time increasing costs due to the requirement that it comply with Tennessee Board of Regents ("TBR") rules and regulations. Despite

her opposition to the merger, DSCC hired Bessent as a supervisor, the functional equivalent of the pre-merger position she held with DCLP.

The DCLP board executed the merger agreement between DSCC and DCLP in a May 2003 board meeting. Later that month, Bessent again expressed her opposition to the merger. In June 2003, Bessent's supervisor, David Lolles, notified her that she had been placed on probationary status based on the allegations of improprieties and the audit findings. Bessent denied any wrongdoing. In August 2003, Dyer County District Attorney General Phil Bivens addressed the DSCC board regarding the state audit findings. According to Bivens, the state audit found that DCLP failed to conform to TBR and DSCC policies and procedures.[1]

At board meetings in both August and November 2003, Bessent again voiced her belief that the merger was causing the current funding shortfall. In mid-November 2003, Dr. Bowyer terminated Bessent as Adult Education Supervisor based on her status as a probationary employee.[2] In late November 2003, Bessent attempted to appeal her termination, but Dr. Bowyer notified her that the decision was unreviewable because she was a probationary employee at the time of her termination.

---

[1]Although the audit revealed a failure to comply with TBR policies, DCLP was not required to comply with such policies until the execution of the DCLP/DSCC merger agreement in May 2003.

[2]A June 19, 2005 *State-Gazette* article regarding Bessent's termination commented that Bessent was terminated "following allegations of grant mismanagement." The article quoted Dr. Bowyer as commenting that "[t]here were some recurring problems with the management of the grant" and that there were "some basic policies that weren't being followed."

No. 06-5305
Bessent v. Dyersburg St. Cmty. Coll. et al.

In July 2004, Bessent sued Defendants, claiming that her termination from DSCC violated her civil rights because: (1) she was retaliated against for exercising her First Amendment rights; (2) her substantive due process rights were violated; and (3) she was deprived of her liberty and property interests without procedural due process.[3]  The district court granted Defendants' motion for summary judgment, finding that (1) Bessent failed to establish a prima facie case because her statements opposing the DCLP/DSCC merger did not touch on a matter of public concern, and (2) her procedural due process claim failed as well because the mismanagement allegations were either never publicized or unactionable since they were nothing more than "charges of improper or inadequate performance, incompetence, neglect of duty or malfeasance."

## STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo*.  *Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006).  The evidence and all reasonable inferences are viewed in a light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

### A. Bessent's First Amendment Retaliation Claim

Bessent argues that she was retaliated against for exercising her First Amendment rights because Dr. Bowyer terminated her employment with DSCC due to her vocal pre-merger opposition

---

[3]In her response to Defendants' motion for summary judgment, Bessent notified the district court that she was voluntarily dismissing with prejudice the substantive due process claim and the procedural due process claim based on deprivation of property.

to the DCLP/DSCC merger and her post-merger comments about the merger's negative impact on donations. She claims that these comments clearly implicate a public concern because, by providing Dyer County residents with adult educational services, "it would seem obvious that a well-founded and efficient literacy program would be a matter of public concern."

To establish a prima facie case of First Amendment retaliation, a plaintiff must show that: (1) she was engaged in constitutionally protected speech; (2) she was subjected to an adverse action or was deprived of some benefit; and (3) the protected speech was a substantial or motivating factor in the adverse action. *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003).

Public employees must meet additional standards to prove that the speech at issue is constitutionally protected. *Id*. Supreme Court precedent has established a three-step inquiry. First, the court must decide whether the speech at issue addressed a matter of public concern. *Connick v. Myers*, 461 U.S. 138, 143 (1983). Second, if the speech does address a matter of public concern, the court must balance the employee's interest in commenting on matters of public concern and the state's interest in promoting efficient public services it provides through its employees. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). Lastly, the court must decide whether the employee's speech was a substantial or motivating factor in the adverse action. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). The initial inquiry, whether the speech at issue touches on a public matter, is a question of law for the court. *See Barnes v. McDowell*, 848 F.2d 725, 733 (6th Cir. 1988).

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*,

461 U.S. at 147-48. Speech addresses a matter of public concern if it relates to "any matter of political, social, or other concern in the community," *id*. at 146, and "involves issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government." *Farhat v. Jopke*, 370 F.3d 580, 590 (6th Cir. 2004). However, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 126 S.Ct. 1951, 1960 (2006).

Bessent's First Amendment retaliation claim fails because her statements opposing the DSCC/DCLP merger are not entitled to constitutional protection since they were made pursuant to her official duties. *See id*. At oral argument, Bessent's counsel conceded as much. In rebuttal, counsel admitted that "Ms. Bessent well had the obligation as the Executive Director of the corporation, of a non-profit corporation, to speak out on the functioning of that program." Later, the court asked counsel, "So this was part of her job?" Counsel responded, "Yeah - to make these suggestions, to make sure the program is functioning properly, to make sure most – more people are being reached." Again, the court enquired, "So your position, if I understand it, is that the statements for which she was fired were an integral part of her job," to which counsel stated "I think that, yes . . . ." Therefore, Bessent's statements were made as part of her official duties and do not receive constitutional protection.

### B. Bessent's Procedural Due Process Claim

Bessent next claims that the Defendants deprived her of a liberty interest under the Due Process Clause because stigmatizing comments regarding her termination were publicly

disseminated. Specifically, she points to: (1) DSCC officials' repeated accusations at board meetings that she committed crimes during her employment; and (2) Dr. Bowyer's comments to the local newspaper regarding Bessent's termination. Bessent contends that she was entitled to a name-clearing hearing because she claims she was deprived of a liberty interest.

"[A] person's good name, reputation, honor, and integrity are among the liberty interests protected by the due process clause of the Fourteenth Amendment." *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989). Defamation alone, however, is insufficient to invoke due process concerns. *See Paul v. Davis*, 424 U.S. 693, 711 (1976). "Some alteration of a right or status 'previously recognized by state law,' such as employment, must accompany damage to reputation." *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir. 2002) (quoting *Paul*, 424 U.S. at 711-12). A non-tenured public employee is entitled to a name-clearing hearing when he shows that he has been stigmatized by the public dissemination of false information during the decision to terminate his employment. *Paul*, 424 U.S. at 709-10.

Five elements must be satisfied to implicate a liberty interest in one's reputation: (1) the stigmatizing comments must be made in conjunction with the plaintiff's termination; (2) plaintiff's employer must do more than allege merely improper or inadequate performance, incompetence, neglect of duty or malfeasance; (3) the stigmatizing statements must be made public; (4) the plaintiff must claim that the statements made against her were false; and (5) the public dissemination must have been voluntary. *See Ludwig v. Bd. of Trs. of Ferris State Univ.*, 123 F.3d 404, 410 (6th Cir. 1997). "Once a plaintiff has established the existence of all five elements, [she] is entitled to a name-clearing hearing if [she] requests one." *Quinn*, 293 F.3d at 320.

Bessent claims that numerous false and defamatory statements about her were published by various DSCC board members during public DSCC board meetings and by Dr. Bowyer to the local newspaper. With respect to the alleged defamatory statements publicized during the DSCC board meetings, Bessent produced no evidence that the board meetings were, in fact, open to the public. Bessent fails to mention this issue on appeal despite the district court's finding this lack of evidence dispositive. She cannot meet the publication requirement without evidence of publication, so her claim with respect to these statements must fail.

The only statement for which Bessent brought forth evidence of publication was Dr. Bowyer's statements in the June 19, 2005 *State-Gazette* article. In the article, Dr. Bowyer was quoted as saying, "There were some recurring problems with the management of the grant, and we have decided to change the leadership of that program." Additionally, Dr. Bowyer stated that there were "some basic policies that weren't being followed."

Although these statements were publicized, they do not give rise to a liberty interest. Under our precedent:

> [A] plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance . . . . Rather, to implicate the Due Process Clause, the employer must have made a statement in the course of the employee's discharge "that might seriously damage his standing and associations in his community" or that might impose "on him a stigma or other disability that [would] foreclose[] his freedom to take advantage of other employment opportunities." A moral stigma such as immorality or dishonesty is required to show a deprivation of liberty.

*Ludwig*, 123 F.3d at 410 (internal citations omitted). Here, Dr. Bowyer's comments impose no such stigma of immorality or dishonesty. Bessent claims that after reading the article several friends

contacted her and said that it sounded like she had stolen money. However, Dr. Bowyer's statements make no mention of criminal allegations, but merely focus on Bessent's job performance. Her comments are nothing more than statements of improper and inadequate performance.

Moreover, there is nothing inherent in the comments that would foreclose Bessent's freedom to take advantage of other employment opportunities. To the contrary, Bessent admitted that she was currently employed as an insurance agent and was the 2004-2005 President of the Tennessee Literacy Coalition Board of Directors. This fact cuts against her claim of any stigma or disability. *See, e.g.*, *Garvie v. Jackson*, 845 F.2d 647, 652 (6th Cir. 1988) (finding no due process violation where plaintiff made no showing that definite range of opportunities is no longer open).

AFFIRMED.