NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0644n.06
Filed: October 22, 2008

No. 07-1417

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

SAMUEL V. THOMAS,                )
                                 )
    Plaintiff-Appellant,         )
                                 )
v.                               )   ON APPEAL FROM THE UNITED
                                 )   STATES DISTRICT COURT FOR
CITY OF DETROIT, AMRU MEAH, ABDUL )   THE EASTERN DISTRICT OF
AQUIL, LUTHER WORTHMAN, ABC       )   MICHIGAN
DEMOLITION,                      )
                                 )
    Defendants-Appellees.        )
                                 )

Before: CLAY and KETHLEDGE, Circuit Judges, and OLIVER[*], District Judge.

KETHLEDGE, Circuit Judge. Samuel Thomas appeals the district court's judgment in favor

of Defendants with respect to various claims concerning the demolition of a building in Detroit. We

affirm.

I.

Thomas is the owner of property in Detroit, on which the former Studebaker Building once

stood. On March 3, 2000, after providing Thomas with notice and an opportunity to be heard, the

Detroit City Council passed a resolution declaring the Studebaker Building to be a "dangerous

---

[*] The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District
of Ohio, sitting by designation.

building," as defined in the City's Dangerous Building Ordinance, Detroit, Mich. Ordinance 17-98, § 12-11-28.0, *et seq*. (July 1, 1998). The resolution authorized the building's demolition. Thomas did not request a deferral of the demolition or appeal the Council's decision. For the next five years, neither Thomas nor the City took any further action regarding the property.

On the night of June 20, 2005, a fire destroyed the building. Immediately thereafter, the City of Detroit Buildings and Safety Engineering Department (BSE) inspected the building's remains. BSE is a part of the executive branch of Detroit's City government. Under the Detroit City Code, BSE is charged with "administer[ing] and enforc[ing] all laws, ordinances and regulations relating to the use of land ('zoning')" as well as "all other laws and ordinances regulating the development, maintenance and use of real property in the city." Detroit, Mich. Home Rule Charter, §§ 7-401, 7-404 (2007). Defendant Amru Meah is BSE's director.

BSE determined the building had collapsed onto a public right-of-way and needed to be demolished immediately. On June 22, 2005, Meah wrote to the Detroit City Council and to Thomas, calling the site "an immediate danger affecting the health, safety and welfare of the public," and stating, "under the authority of Ordinance 290-H, we are taking emergency measures to have this building or portions thereof removed with the cost assessed against the property." Thomas wrote to the City the same day, stating he had retained Ferrous Processing and Trading Company to handle the "removal, transport and disposal" of various materials from the property.

On July 6, 2005, Meah wrote back to Thomas, stating that the demolition needed to be completed by a contractor possessing a Class A Wrecking License issued by BSE. Ferrous Processing apparently lacked such a license. Meah warned that Thomas's failure to retain an

appropriate contractor would "result in legal action." He noted, "[i]f the City of Detroit has to demolish this structure, the cost will be assessed against the property and court action will be pursued to collect all cost for this demolition." Meah gave Thomas ten days to demolish the building once the Fire Department released the site.

On July 13, 2005, Defendant Abdul Aquil, assistant chief of building inspections for BSE, also wrote to Thomas. He stated that the "site must be secured and removal of debris must commence by July 15, 2005"; that "failure to proceed by this date will result in this Department immediately securing the services of a licensed demolition contractor and removing the debris"; and that "[t]he cost of this action will be assessed against the property."

Thomas wrote to Aquil on July 18, 2005, again stating his intent to clean up the site himself, using "the salvageable metal and bricks on the site" to finance the project. He asked for an additional 10 to 15 days to "sort out these issues[.]"

Aquil responded on July 26, 2005, writing that the "site must be secured, the required permits obtained and removal of the debris absolutely must commence by July 29, 2005." He continued, "[f]ailure to proceed by this date will result in this Department securing the services of a licensed demolition contractor and removing the debris[.]" This letter again warned that "[t]he cost of this action will be assessed against the property."

Thomas wrote back on July 29, 2005, stating he had not received Aquil's latest letter until July 28, 2005, one day before the City's new deadline for removal. He also asserted that the City was acting unfairly by not responding to his request to use the proceeds from salvageable materials to pay for the clean-up. The City recorded a *lis pendens* against the property on the same day.

Apparently hearing nothing further from Thomas, BSE hired Defendant ABC Demolition, a licensed contractor, to demolish the site and remove the debris. It appears the demolition process was completed by October 7, 2005. The City spent $485,351.50 to clear the site.

Thomas thereafter filed this lawsuit, asserting claims against the City, Meah, Aquil, ABC Demolition, and ABC's principal, Luther Worthman. Among its 18 counts, the Complaint sought relief pursuant to 42 U.S.C. § 1983, alleging the City violated Thomas's rights to procedural and substantive due process under the Fourteenth Amendment of the United States Constitution. The Complaint also asserted several Michigan-law tort claims against Meah, and a claim against Aquil for intentional infliction of emotional distress. The City filed a counterclaim against Thomas to recover its demolition costs.

Defendants filed a motion to dismiss Thomas's claims, or, in the alternative, for summary judgment as to all of Thomas's claims. The City also sought summary judgment on its counterclaim.

The district court issued a decision on February 28, 2007, dismissing, *inter alia*, Thomas's substantive due process claim, his state-law tort claims against Meah, and his claim for intentional infliction of emotional distress against Aquil. The court also granted summary judgment in favor the City on Thomas's procedural due process claim and on the City's counterclaim.

II.

We review *de novo* the district court's grant of a motion to dismiss. *Zaluski v. United American Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008). A claim survives a motion under Fed. R. Civ. P. 12(b)(6) "where its '[f]actual allegations [are] enough to raise a right to relief above

the speculative level on the assumption that all of the complaint's allegations are true.'" *Zaluski*, 527 F.3d at 570.  When reviewing a motion under Rule 12(b)(6), we treat "all well-pleaded allegations in the complaint as true, and find dismissal proper only if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle him or her to relief."  *Zaluski*, 527 F.3d at 570.

We also review *de novo* a district court's grant of summary judgment. *Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008).  In our analysis, we "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the non-moving party." *Id*.

III.

A.

Thomas appeals the district court's grant of summary judgment in Defendants' favor on his procedural due process claim.  With respect to this claim, we first determine whether "the interest at stake is within the Fourteenth Amendment's protection of liberty and property."  *Ferencz v. Hairston*, 119 F.3d 1244, 1247 (6th Cir. 1997).  We then "consider the form and nature of the process that is due." *Id.*

The parties disagree as to whether Thomas held a protected property interest in any salvageable metal and brick at the site of his former building.  For purposes of this appeal, we assume, without deciding, that he did.  We likewise assume that he properly exhausted his state remedies before bringing his claims.  We thus decide only whether Thomas received all the process he was due under the Fourteenth Amendment.

"Generally, the process that is due before the state may deprive an owner of property includes notice to the owner prior to the deprivation and an opportunity for a predeprivation hearing." *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994). Here, in March 2000, *five years* prior to the building's demise, the Detroit City Council declared it a "dangerous building" and authorized its demolition. It is undisputed that Thomas was given both notice and an opportunity to be heard at that time. Never, prior to the fire, did Thomas contest the Council's determination; and never, prior to the fire, did he attempt to renovate or demolish the building himself. This five-year delay itself defeats Thomas's claim that he was not given sufficient time to remedy the situation. The fortuity that the building later burned down, and created an exigent health hazard, does not serve to expand his rights.

Thomas also received a meaningful opportunity to act in the months between the fire and the demolition. Between June 22 and July 29, 2005, Thomas received and responded to four letters from BSE. Each letter referred to the impending demolition of the building, and each warned Thomas that he would be responsible for the cost of the demolition, should he fail to act immediately. When Thomas wrote back, BSE responded that time was of the essence. Yet Thomas does not allege that he even *attempted* to hire a licensed contractor to do the demolition.

The Constitution does not micro-manage the removal of fire debris to the extent that Thomas suggests. He was afforded all the process he was due. His procedural due process claim is meritless, and the district court properly granted Defendants' motion for summary judgment as to that claim.

B.

Thomas next argues the district court erred in dismissing his substantive due process claim. As pled in the Complaint, the claim is based on an allegation of cronyism by City officials, alleging the City "deviated from [sic] ignored, or failed to follow its own procedures herein in that it passed over qualified low bids, and for reasons of cronyism to the ability to complete the necessary work at the lowest feasible price, awarded the contract to Defendant, ABC Demolition, and Worthman." But Thomas abandons this theory on appeal. Instead, he now alleges that "Defendants acted unreasonably and arbitrarily in imposing *tight deadlines* and in refusing to grant Plaintiff ample opportunity to demolish the building himself. Defendants [also] denied Plaintiff his right to salvage his property and sell the salvage[.]" Appellant's Brief at 16 (emphasis added).

As presented to this court, therefore, Thomas's substantive due process claim is merely derivative of his procedural due process one–which, as discussed above, is meritless. Moreover, because Thomas did not present his current theory for this claim to the district court, we deem the theory waived. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008) ("an argument not raised before the district court is waived on appeal to this Court"). Hence the district court properly dismissed the claim.

C.

Thomas next argues that the district court erred in dismissing his state-law tort claims against Amru Meah, Director of BSE. Thomas asserts that Meah does not enjoy statutory governmental immunity. We disagree.

The relevant Michigan governmental immunity statute, M.C.L. § 691.1407(5) (2008), provides:

the highest appointive executive official of all levels of government [is] immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority.

Thomas admits that Meah is the highest appointive official of BSE. Appellant's Brief at 21. The issue, then, is whether BSE is a "level of government" within the meaning of the statute.

Both the existing Detroit City Code and Michigan case law show that it is. According to the Michigan Court of Appeals, an entity is a "level of government" under the statute where (i) it has "broad-based jurisdiction or extensive authority similar to that of a judge or legislator"; (ii) "it shares aspects of governance with other political subdivisions, such as the power to levy taxes, the power to make decisions having a wide effect on members of the community, or the power of eminent domain"; or (iii) "the Detroit City Charter and the Detroit City Code grant [it] autonomous authority[.]" *Grahovac v. Munising Tp.*, 689 N.W.2d 498, 501 (Mich. Ct. App. 2004); *Davis v. City of Detroit*, 711 N.W.2d 462, 466 (Mich. Ct. App. 2006).

BSE possesses several of these attributes. BSE's jurisdiction is broad and exclusive, encompassing the areas of zoning and enforcement of the building code, among others. Moreover, both the City Code and Home Rule Charter give BSE autonomous authority. The Detroit City Code authorizes the director of BSE to "enforce all the provisions of the [building] code . . . issue all necessary notices or orders to remove illegal or unsafe conditions . . . [and] insure compliance with all the code requirements for the safety, health and general welfare of the public." Detroit, Mich. Ordinance 290-H, §§ 12-11-12.1, 12-11-12.3 (1997), saved from repeal by Detroit, Mich. Code

§ 9-2-1 (2007). Article 7 of Detroit's Home Rule Charter mandates that BSE "administer and enforce all other laws and ordinances regulating the development, maintenance and use of real property in the city." Detroit, Mich. Home Rule Charter § 7-404 (2007).

No other branch of Detroit government shares these responsibilities under the Code and Charter. And BSE's decisions are subject to no one's direct approval. BSE is therefore a "level of government" within the meaning of M.C.L. § 691.1407(5); and Meah, as its highest appointive official, is immune from state tort liability. The district court correctly dismissed these claims.

D.

Thomas next argues the district court erred in dismissing his claim against BSE's assistant director, Abdul Aquil, for intentional infliction of emotional distress. Although the Michigan Supreme Court has not formally recognized this tort, it has articulated the elements of such a claim. *See Roberts v. Auto-Owners Ins. Co.,* 374 N.W.2d 905, 908 (Mich. 1985). To succeed, a plaintiff must show extreme and outrageous conduct, committed intentionally or recklessly, causing him severe emotional distress. *Id*. The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id*. at 908-09.

The Complaint fails to state such a claim. It merely recites the claim's elements, without alleging any underlying *conduct* sufficient to satisfy them. That is not enough. *See Found. for Interior Design Educ. Research v. Savannah College of Art & Design*, 244 F.3d 521, 530 (6th Cir. 2001) ("the price of entry, even to discovery, is for the plaintiff to allege a factual predicate concrete

enough to warrant further proceedings, which may be costly and burdensome."). The district court properly dismissed this claim.

E.

Thomas next appeals the district court's grant of summary judgment in favor of the City on its counterclaim for its costs of demolition. Under Michigan law, after a city finds a structure to be "a dangerous building," the owner has an opportunity to appear at a hearing and show cause why the city should not either demolish the building or take action to make it safe. M.C.L. § 125.540(3) (2007). If the city decides the building should be demolished, and the owner fails to appear "or neglects or refuses to comply with the order [of demolition]," the hearing officer may "request that necessary action be taken to enforce the order." MCL § 125.541(3) (2007). In that event:

> The owner . . . shall be notified by the assessor of the amount of the cost of the demolition[.] . . . If the owner or party in interest fails to pay the cost within 30 days after the mailing by the assessor of the notice of the amount of the cost, the city . . . shall have a lien for the cost incurred . . . to bring the property into conformance with this act.

MCL § 125.541(6) (2007). Further, "the city may bring an action against the owner of the building or structure for the full cost of the demolition[.]" MCL § 125.541(7) (2007).

Here, it is undisputed that, in early 2000, Thomas was afforded the opportunity to appear at a hearing to show cause why the building should not be destroyed. It is also undisputed that Thomas did not comply with the City's order of demolition. It was thus within the City's statutory right to enforce the order and assess the costs of demolition against Thomas.

Thomas failed to come forward with any evidence creating a genuine issue as to the City's entitlement to these costs. We therefore affirm the district court's grant of summary judgment on the City's counterclaim.

F.

Finally, Thomas seeks permission to amend his Complaint to add a Fourth Amendment claim. He did not move to amend in the district court, and we see no reason to prolong this litigation. We therefore deny his request.

IV.

For these reasons, we affirm the judgment of the district court.