**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 18a0317n.06

Case No. 17-2169

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 27, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| BRUCE MEYERS, et al., | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| VILLAGE OF OXFORD, et al., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE: COOK and DONALD, Circuit Judges; HALE, District Judge.*

**HALE, District Judge.** Bruce Meyers, Kallie Roesner-Meyers, and Eugenia Calocassides served as volunteer reserve officers for the Village of Oxford Police Department. They contend that their reputations were damaged when they were removed from that post, and they sought, but did not receive, a hearing to clear their names. The district court found that because they were not paid employees whose employment was terminated, they were not entitled to a name-clearing hearing. That conclusion was inconsistent with Supreme Court and Sixth Circuit precedent, and we therefore **REVERSE**.

**I.**

The following facts are set forth in the amended complaint and accepted as true for purposes of our review. *See Crosby v. Univ. of Ky.*, 863 F.3d 545, 549 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 741 (2018) (citing *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016)).

_____

* The Honorable David J. Hale, United States District Judge for the Western District of Kentucky, sitting by designation.

Appellants served as reserve officers—a volunteer position—for the Village of Oxford Police Department. Foreseeing a need for additional patrols, then-Police Chief Michael Neymanowski took steps to create a horse-mounted unit, of which Appellants would be members.[1] On September 15, 2016, Neymanowski sent a letter to the organizers of the Mounted Police Colloquium stating:

> My agency is in the process of creating the first Police Reserve Officer[s] Horse Mounted Unit. The members of this Mounted Unit will consist of Officers Kallie Roesner, Dr. Bruce Meyers and Eugenia Calocassides. It would be an honor to have them represent the Oxford Village Police Department for your upcoming Mounted Police Colloquium.[2]

Around this time, the Village Manager obtained liability insurance for the horse-mounted unit.

Appellants participated in the Mounted Police Colloquium as representatives of the Village of Oxford and were successful in several competitions. At the Oxford Village Council's October 11, 2016 meeting, Neymanowski "presented [Appellants] to the Village Council as members of the Village's new Reserve Officer[s] Horse Mounted Unit," and the Council "publicly expressed gratitude and approval of [Appellants'] activities."

Appellants then joined the Michigan Multi-Jurisdictional Mounted Police Drill Team, again representing the Village of Oxford. When the Multi-Jurisdictional Team was unexpectedly invited to be a part of the inauguration parade and ceremonies for then-President-elect Trump, Neymanowski confirmed in a letter to the Multi-Jurisdictional Team that Appellants would participate, and Appellants "eagerly prepared . . . themselves and their horses to represent the Village of Oxford and its police department" at the inauguration. After a local newspaper reported Appellants' anticipated involvement in the inaugural festivities, however, Village Council

---

[1] Neymanowski's name is apparently misspelled in the amended complaint.

[2] Appellants describe the Mounted Police Colloquium as an annual multi-day event at Kentucky Horse Park that entails "training and competitions . . . for and by police mounted units" in "equitation, jumping, crowd control, and sensory techniques."

members "became unglued by this news" and proceeded at their next meeting to question Appellants' "reputation, good name, honor, and integrity . . . even to the point of accusing [Appellants] of violating the penal law by impersonating police officers." The Council then voted to remove Appellants as reserve officers and to issue communications disavowing any Council approval or authorization of the horse-mounted unit. Appellants were not provided notice and a hearing prior to the Council's actions, nor did they receive a name-clearing hearing upon request. They sued the Village of Oxford, Village Manager Joe Young, Village Attorney Robert Charles Davis, Village President Sue Bossardet, and acting Village Police Chief Michael Solwold, alleging violations of procedural due process under the Fourteenth Amendment.

## II.

We review a dismissal pursuant to Rule 12(b)(6) de novo, "constru[ing] the complaint in the light most favorable to the plaintiff[s], accept[ing] all well-pleaded factual allegations in the complaint as true, and draw[ing] all reasonable inferences in favor of the plaintiff[s]." *Crosby*, 863 F.3d at 549 (quoting *Courtright*, 839 F.3d at 518); *see id.* at 551.

### A.      Liberty Interest

"The Due Process Clause of the Fourteenth Amendment protects an individual's liberty interest in [his] 'reputation, good name, honor, and integrity.'" *Id.* at 555 (quoting *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir. 2002)). Appellants allege that they were deprived of this interest without due process because they were denied a name-clearing hearing. "[W]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Id.* (alteration in original) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972)). However, these protections are available only if the alleged reputational damage is accompanied by "[s]ome alteration of a right or status 'previously

3

recognized by state law,' such as employment." *Quinn*, 293 F.3d at 319 (quoting *Paul v. Davis*, 424 U.S. 693, 711-12 (1976)).

The district court, relying on the dictionary definition of "employment," concluded that because Appellants "were not paid for their service," they were not employees and thus not entitled to a name-clearing hearing. In reaching this conclusion, it relied on the test enunciated in *Quinn*. Under that test, a plaintiff must allege five factors "to establish that he was deprived of a liberty interest and entitled to a name-clearing hearing":

> First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment . . . . Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance . . . . Third, the stigmatizing statements or charges must be made public. Fourth, the plaintiff must claim that the charges made against him were false. Lastly, the public dissemination must have been voluntary.

*Crosby*, 863 F.3d at 555 (omissions in original) (quoting *Quinn*, 293 F.3d at 320). The district court found the third, fourth, and fifth factors to be met but held that the first and second factors required an employment relationship that does not exist in this case because Appellants' work was unpaid.

As evidenced by *Quinn*, its predecessors, and its progeny, the issue of entitlement to a name-clearing hearing frequently arises in the employment context. *See, e.g.*, *Crosby*, 863 F.3d at 555-57; *Ludwig v. Bd. of Trs. of Ferris State Univ.*, 123 F.3d 404, 409-11 (6th Cir. 1997). Both the Supreme Court and this court have found protected liberty interests in reputation outside that context, however. In such cases, the alleged defamation still "must be tied to '[s]ome alteration of a right or status previously recognized by state law.'"[3] *Crosby*, 863 F.3d at 555 (alteration in

---

[3] Appellants argue that *Roth* recognized two situations under which a name-clearing hearing is required: "when (1) charges are made against an individual which might seriously damage his standing and associations in the community; *or* (2) the state imposes on an individual

original) (quoting *Quinn*, 293 F.3d at 319). For example, in *Wisconsin v. Constantineau*, 400 U.S. 433 (1971), the Court declared unconstitutional a Wisconsin statute that allowed police to post a notice forbidding the sale or gift of alcoholic beverages to individuals "who 'by excessive drinking' produce[d] described conditions or exhibit[ed] specified traits, such as exposing [themselves] or family 'to want' or becoming 'dangerous to the peace' of the community." *Id.* at 434. Because such "posting" "deprived the [plaintiff] of a right previously held under state law— the right to purchase or obtain liquor in common with the rest of the citizenry," it "significantly altered her status as a matter of state law" and "justified the invocation of procedural safeguards." *Paul*, 424 U.S. at 708-09 (discussing *Constantineau*, 400 U.S. at 437).

The Supreme Court revisited this issue in *Goss v. Lopez*, 419 U.S. 565 (1975), where the plaintiffs were students who had been suspended from school without a hearing. The students had a right under state law to attend public school, the Court held, and thus reputational damage inflicted in denying that right gave rise to Due Process protections. *Id.* at 574-75; *see Paul*, 424 U.S. at 710 (finding conclusion that Fourteenth Amendment requires more than mere defamation to be "quite consistent" with *Lopez*, which was then the Court's "most recent holding in this area" of law); *see also Vitek v. Jones*, 445 U.S. 480, 494 (1980) (holding that "the stigmatizing

---

a stigma or other disability foreclosing his freedom to take advantage of other employment opportunities." Appellants purport to rely on "*Roth*'s first theory"—under which, they claim, "employment (paid or otherwise) is not a required element." But the Supreme Court made clear in a later decision that either "[a] charge . . . that might seriously damage [the plaintiff's] standing and associations in his community" or "a stigma or other disability" restricting future employment must be accompanied by termination of employment or another change in status to be actionable under the Fourteenth Amendment. *Paul*, 424 U.S. at 708-10 (quoting *Roth*, 408 U.S. at 573). Thus, Appellants do not state a claim for relief merely by alleging that they were subjected to charges "that might seriously damage [their] standing and associations in [their] community." *Id.* at 709. To hold otherwise would "convert[] every defamation by a public official into a deprivation of liberty within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Id.* at 702; *see also Siegert v. Gilley*, 500 U.S. 226, 233 (1991) ("Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation.").

consequences of a transfer to a mental hospital for involuntary psychiatric treatment, coupled with the subjection of the prisoner to mandatory behavior modification as a treatment for mental illness, constitute the kind of deprivations of liberty that requires procedural protections").

This court has likewise found a protected liberty interest in reputation in at least one published decision beyond the employment context. In *Mertik v. Blalock*, 983 F.2d 1353 (6th Cir. 1993), the plaintiff was not a government employee, but rather an independent contractor who held "staff privileges" at a city-owned ice rink. *Id.* at 1356; *see id.* at 1358. She gave skating lessons at the rink, contracting directly with her students, who also paid the rink for time spent on the ice during lessons. *Id.* at 1356. When city employees forced her off the ice and publicized false accusations of child sexual abuse against her, Mertik sued, alleging that the government defendants had deprived her of liberty and property interests without due process. *Id.* at 1357. After noting that "the [Supreme] Court has limited the scope of an actionable liberty interest deprivation to situations involving termination of government employment *or* the loss of a legal right or status previously enjoyed under state or federal law," *id.* at 1362 (emphasis added) (citing *Paul*, 424 U.S. at 710-11), we held that Mertik had adequately alleged a protected liberty interest. *Id.* at 1364. In so holding, we "view[ed] the alleged stigmatizing statements . . . as having been made in the context of the termination of a mutually beneficial business relationship in which the governmental benefit, the right to use the city's rink, played an integral role." *Id.* at 1363.

Though *Mertik* predates the five-factor test enunciated in *Quinn*, this court has consistently stated that "[s]ome alteration of a right or status 'previously recognized by state law,' *such as* employment, must accompany the damage to reputation." *Quinn*, 293 F.3d at 319 (emphasis added) (quoting *Paul*, 424 U.S. at 711-12); *see Crosby*, 863 F.3d at 555 ("[D]efamation alone is not enough to trigger this constitutional protection; rather, the alleged damage must be tied to

'[s]ome alteration of a right or status previously recognized by state law.'" (second alteration in original) (quoting *Quinn*, 293 F.3d at 319)); *Bessent v. Dyersburg State Cmty. Coll.*, 224 F. App'x 476, 480 (6th Cir. 2007) ("Some alteration of a right or status 'previously recognized by state law,' such as employment, must accompany [the] damage to reputation." (quoting *Quinn*, 293 F.3d at 319)); *Satkowiak v. Bay Cty. Sheriff's Dep't*, 47 F. App'x 376, 379 (6th Cir. 2002) ("[M]ore is required than simply a state-imposed stigma[;] there must be a state-imposed stigma as well as a corresponding loss of right or status." (citing *Quinn*, 293 F.3d at 319)); *Cutshall v. Sundquist*, 193 F.3d 466, 479 (6th Cir. 1999) ("The Due Process Clause is implicated only when state conduct alters 'a right or status previously recognized by state law.'" (quoting *Paul*, 424 U.S. at 711)).

Moreover, we have considered a number of non-employment cases in addition to *Mertik* without declaring that only terminated employees have a right to a name-clearing hearing.[4]  For example, just one month after *Quinn*, this court decided *Med Corp. v. City of Lima*, 296 F.3d 404 (6th Cir. 2002), in which the plaintiff ambulance company asserted a due-process violation on the ground that a proposed suspension of its license "would damage its business reputation and impair its ability to obtain business in the future." *Id.* at 413.  There, we stated the first element of the

---

[4] We acknowledge this court's statement in *Ferencz v. Hairston*, 119 F.3d 1244 (6th Cir. 1997), that name-clearing hearings are only available to "nontenured public employee[s]" whose employment has been terminated in connection with "publicly stated reasons that reflect on the terminated employee's honesty or integrity." *Id.* at 1249; *see id.* at 1250 (concluding that because neither plaintiff in *Ferencz* was a terminated public employee, district court incorrectly based dismissal on their failure to request a name-clearing hearing).  Though one panel of this Court cannot overturn another's decision, the above-quoted statement was not necessary to the holding in *Ferencz*, *see id.* at 1250, and was inconsistent with Supreme Court precedent such as *Constantineau* and *Goss*.  It thus does not bind us here. *See Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 737 (2007) (explaining that dicta is not binding); *Draw v. City of Lincoln Park*, 491 F.3d 550, 556 (6th Cir. 2007) ("In the Sixth Circuit, prior published decisions are controlling unless inconsistent with a decision of the United States Supreme Court or the Sixth Circuit sitting en banc." (citing *Schoenberger v. Russell*, 290 F.3d 831, 841 (6th Cir. 2002))).

five-factor test to require that "the allegedly stigmatizing statements [have been] made in connection with 'the loss of a governmental right, benefit, or entitlement'"; we assumed, without deciding, that this factor was met. *Id.* at 414 (quoting *Mertik*, 983 F.2d at 1363). Other cases have challenged the issuance of a paper license plate following the plaintiff's boyfriend's drunk-driving arrest, public disclosure of the plaintiff's sex-offender status, statutory labeling of sex offenders as mentally ill, and release of a police incident report accusing the plaintiff of rape. *See Satkowiak*, 47 F. App'x at 379; *Fullmer v. Mich. Dep't of State Police*, 360 F.3d 579, 580-82 (6th Cir. 2004); *Cutshall*, 193 F.3d at 478-79; *Dean v. McWherter*, 70 F.3d 43, 45 (6th Cir. 1995); *Bennafield v. Canton Police Dep't*, 856 F.2d 192 (6th Cir. 1988) (table). In light of this precedent, as well as the Supreme Court cases discussed above, we clarify that a plaintiff need not allege an employment relationship "to establish that he was deprived of a liberty interest and entitled to a name-clearing hearing." *Crosby*, 863 F.3d at 555 (quoting *Quinn*, 293 F.3d at 320).

The five-factor test that has developed in the employment context can easily be modified for use in non-employment cases. Indeed, the third, fourth, and fifth factors require no modification and, as the district court found, are met here: the alleged stigmatizing statements were made at a public meeting; Appellants claim that the statements are false; and the statements were voluntarily made public. *See id.* As to the first factor, the stigmatizing statements must have been "made in connection with 'the loss of a governmental right, benefit, or entitlement.'" *Med Corp.*, 296 F.3d at 414 (quoting *Mertik*, 983 F.2d at 1363). Second, the statements must accuse the plaintiff of more than "merely improper or inadequate performance, incompetence, neglect of duty or malfeasance," *Crosby*, 863 F.3d at 555 (quoting *Quinn*, 293 F.3d at 320); they must be of the type "that [would] foreclose[] his freedom to take advantage of other employment opportunities." *Med Corp.*, 296 F.3d at 414 (alterations in original) (quoting *Ludwig*, 123 F.3d at 410); *cf. Mertik*,

983 F.2d at 1364 (noting that plaintiff claimed to have suffered "loss of employment opportunities resulting from the stigmatizing effect of being branded a child abuser"). Under this modified test, Appellants' complaint is sufficient: the alleged stigmatizing statements (1) were made in connection with the loss of Appellants' status as reserve officers for the Village of Oxford Police Department and (2) accused Appellants of illegally impersonating police officers.

**B.     Immunity**

The district court found in the alternative that the individual-capacity defendants were entitled to qualified and legislative immunity. Appellants did not present immunity as an issue on appeal, instead merely asserting in a footnote to the final paragraph of their brief that "[b]y reversing the dismissal of this lawsuit, it would reverse any issue as legislative immunity [sic] and qualified immunity which was based on the non-existence of a constitutional right discussed herein." In their reply brief, they denied that they had waived the immunity issues but offered no further argument.

"Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997)). Unlike qualified immunity, legislative immunity does not turn on the existence of a constitutional violation, but rather the nature of the defendants' actions: "local legislators may invoke legislative immunity to insulate themselves as individuals from liability based on their legislative activities." *Smith v. Jefferson Cty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 217-19 (6th Cir. 2011) (emphasis removed) (citations omitted). The district court concluded that the Village Council members' vote to discontinue the mounted unit was a legislative act. This conclusion is unaffected by our finding that Appellants' due-process claim is adequate, and the dismissal of the individual-capacity claims therefore stands.

9

**III.**

For the reasons set forth above, we **REVERSE** the district court's decision except as to the individual-capacity claims and **REMAND** the case for proceedings consistent with this opinion.